## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

WILLIAM ANDERSON,

Plaintiff-Appellant

v.

KNOX COUNTY, KY, ET AL.,

Defendants-Appellees

_____

On Appeal from the United States District Court for the Eastern District of
Kentucky, London Division
District Ct. No. 6:17-cv-00133
Hon. Judge Caldwell Presiding

_____

**BRIEF OF APPELLANT WILLIAM ANDERSON**

Elliot Slosar*
Amy Robinson Staples
Margaret E. Campbell
LOEVY & LOEVY
311 N. Aberdeen, 3rd FL
Chicago, IL 60607
(312) 243-5900
*Counsel of Record

# TABLE OF CONTENTS

Table of Authorities ...................................................................................v

STATEMENT REGARDING ORAL ARGUMENT ...............................................1

JURISDICTIONAL STATEMENT ........................................................................1

ISSUES PRESENTED FOR REVIEW ....................................................................1

STATEMENT OF THE CASE.................................................................................2

Introduction...........................................................................................................2

STATEMENT OF THE CASE.................................................................................2

   A. The Murder of Bobby Wiggins .....................................................................3

       1. Defendants Pickard and Eubanks Learn Sizemore was With Wiggins When Wiggins Was Last Seen Alive ....................................................3

       2. Defendant Eubanks Immediately Interviews Plaintiff, Who Cooperates and Gives a Detailed Statement Further Implicating Sizemore ...................................................................................................5

       3. The Defendant Officers' Interview of Dave Fox Corroborates Plaintiff's Alibi and Further Implicates Sizemore ...............................6

       4. The Defendant Officers' Interview of Jeremy Ferrell Corroborates Plaintiff's Alibi and Further Implicates Sizemore ...............................7

       5. By The Evening of December 1, 2011, Defendants Eubanks and Pickard Verified Plaintiff's Alibi and Determined that Sizemore Was Likely Responsible for Wiggins' Disappearance.................................8

   B. Defendants Fabricate Statement from James Otis Sizemore, Falsely Implicating Plaintiff.......................................................................................9

i

1.  Defendants Pickard and Eubanks Conduct Sizemore's First Interrogation and Fabricate his Statement ..............................................9

2.  Defendants York, Eubanks, and Johnson Conduct Sizemore's Second Interrogation and Fabricate His Statement ..........................................11

C. Defendants York, Joseph, and Eubanks Fabricate Statement from Dave Fox, Falsely Implicating Plaintiff ...........................................................13

D. The Defendant Officers Learn of Additional Evidence Supporting Plaintiff's Innocence, Inferring Fabrication and Negating Probable Cause ..................16

1.  Defendant Johnson Learns that Jailhouse Recordings Confirm the Falsity of Sizemore's Fabricated Statements ......................................................16

2.  Defendant Johnson Learns that Forensic Testing Establishes Falsity of Sizemore's Fabricated Statement ............................................................17

3.  The Defendants Learn of Overwhelming Evidence Implicating Gray and Sizemore, Demonstrating the Falsity of Sizemore's Statement...............19

a.  The Defendant Officers Ignored Gray's Participation in the Murder and Fabricated Evidence Against Plaintiff ........................................21

E. Defendant Johnson Knowingly Presents False and Fabricated Evidence at the Preliminary Hearing and to the Grand Jury ..............................................22

1.  Defendant Johnson Knowingly Presents Fabricated Evidence at the Preliminary Hearing, While Withholding Exculpatory and Impeaching Evidence ...............................................................................................22

2.  Defendant Johnson Presents Sizemore's Fabricated Statement to Grand Jury While Withholding Critical Exculpatory and Impeachment Evidence ...............................................................................................25

ARGUMENT SUMMARY ....................................................................................29

ARGUMENT ........................................................................................................30

I.      The Legal Standard for Adjudicating this Appeal...........................................30

II.     The District Court Erred in Granting Summary Judgment by Refusing to
        Credit the Evidence Supporting Plaintiff's Malicious Prosecution Claim....31

        A. The Elements of a Malicious Prosecution Claim.....................................31

        B. Defendants Johnson, Medford, York, Pickard, Eubanks, and Lawson
           Made, Influenced, and/or Participated in the Decision to Prosecute
           Plaintiff or Contributed to His Continued Detention...............................32

        C. Plaintiff Has Rebutted the Probable Cause Presumption.........................35

        D. Defendants Fabricated James Otis Sizemore's Statement to Set
           Prosecution in Motion, Rebutting Probable Cause..................................37

        E. A Reasonable Juror Could Find that Defendant Johnson Presented False
           and Fabricated Statements at the Preliminary Hearing and Grand Jury and
           Withheld Material Evidence.....................................................................42

        F. A Reasonable Juror Could Find Defendants Lacked Probable Cause to
           Support Charges Against Plaintiff, Even Without Fabrication...............44

           1. Exculpatory Evidence Dissolved Probable Cause Against Plaintiff...45

III.    The District Court Erred in Granting Summary Judgment on Plaintiff's
        Fabrication Claim...........................................................................................47

        A. Plaintiff's Fabrication Claim Regarding Sizemore is a Question for the
           Jury............................................................................................................47

        B. Plaintiff's Fabrication Claim Regarding Dave Fox is a Question for the
           Jury............................................................................................................50

IV.     Plaintiff's Derivative Federal Claims and State Law Claims Should Be
        Reinstated.......................................................................................................51

        A. A Trial on the Municipal Liability Claims Against Knox County is
           Warranted...................................................................................................51

iii

      1.  The Evidence Supports that the Department's Training and Supervision Were Constitutionally Inadequate...................................52

      2.  A Jury Could Find that the Department's Inadequate Training and Supervision Were the Result of Deliberate Indifference ...................54

      3.  A Jury Could Find that the Department's Inadequate Training and Supervision Closely Related to Plaintiff's Injury ...............................55

B.  Plaintiff's Failure to Intervene Claim Merits a Trial......................................57

C.  A Trial is Warranted on Plaintiff's Federal Conspiracy Claim....................58

D.  A Trial is Warranted on Supervisory Liability.............................................58

E.  Plaintiff's State Law Claims Should be Reinstated.......................................59

# TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)......................................30, 31

*Ayers v. City of Cleveland*, 773 F.3d 161 (6th Cir. 2014) ..................................... 47

*Bd. of Cty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397 (1997).....................54

*Beck v. Ohio*, 379 U.S. 89 (1964) .......................................................... 49

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .........................................30

*Davis v. Gallagher,* 951 F.3d 743 (6th Cir. 2020)....................................35

*DiPasquale v. Hawkins*, 748 F. App'x 688 (6th Cir. 2018) ..................................36

*Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000)...........................................44

*Garza v. Lansing Sch. Dist.*, 972 F.3d 853 (6th Cir. 2020) ....................................31

*Gregory v. City of Louisville,* 444 F.3d 725 (6th Cir. 2006) ................35, 45, 48, 56

*Hale v. Kart,* 396 F.3d 721 (6th Cir. 2005) ............................................................35

*Halsey v. Pfeiffer*, 750 F.3d 273 (3rd Cir. 2014) .........................................49

*Hurt v. Wise*, 880 F.3d 831 (7th Cir. 2018) ............................................................48

*Illinois v. Gates*, 462 U.S. 213 (1983) ....................................................................49

*Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019) ...........................*passim*

*Jones v. Clark Cnty.*, 690 F. App'x 334 (6th Cir. 2017) ....................................35, 36

*King v. Harwood*, 852 F.3d 568 (6th Cir. 2017)............................. 31-32, 35, 36, 43

*Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019).........................................48

*Logsdon v. Hains*, 492 F.3d 334 (6th Cir. 2007) .................................................... 44

*Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) ........................................35

*Meakens v. Benz*, 515 F. App'x 414 (6th Cir. 2013) ............................. 45

*Miller v. Maddox*, 866 F.3d 386 (6th Cir. 2017) ................................33, 43

*Mills v. Barnard*, 869 F.3d 473 (6th Cir. 2017)........................32, 34, 36

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)............................. 51

*Naselroad v. Mabry*, 2019 WIL 4725157 (E.D. Ky. Sept. 26, 2019).....................32

*Ouza v. City of Dearborn Heights*, 969 F.3d 265 (6th Cir. 2020).........45, 46, 51, 54

*Rieves v. Town of Smyrna*, 959 F.3d 678 (6th Cir. 2020).......................36

*Robertson v. Lucas,* 753 F.3d 606 (6th Cir. 2017) ...............................47

*Sampson v. Vill. of Mackinaw City,* 685 F. App'x 407 (6th Cir. 2017) .................33

*Sanders v. Jones,* 728 Fed.Appx. 563 (6th Cir. 2018)............................35

*Shadrick v. Hopkins Cnty.*, 805 F.3d 724 (6th Cir. 2015) ............................... 55, 56

*Sheffey v. City of Covington*, 564 F. App'x 783 (6th Cir. 2014) ...........................57

*Sornberger v. City of Knoxville*, 434 F.3d 1006 (7th Cir. 2006) ...........................49

*Tlapanco v. Elges*, 969 F.3d 638 (6th Cir. 2020) ....................................34

*Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472 (6th Cir. 2020)... 30, 31

*Webb v. United States,* 789 F.3d 647 (6th Cir. 2015)..................................35, 58, 59

## STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 56(a)................................................................30

# DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1, Plaintiff-Appellant makes the following disclosures:

1.     Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.     Is there a publicly owned corporation, not party to the appeal that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

/s/ Amy Robinson Staples
Attorney for Plaintiff-
Appellant William Anderson

Elliot Slosar
Amy Robinson Staples
Margaret E. Campbell
LOEVY & LOEVY
311 N. Aberdeen, 3rd FL
Chicago, IL 60607
(312) 243-5900

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant William Anderson requests oral argument as he believes it will assist the Court in its adjudication.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Plaintiff's federal claims under 28 U.S.C. §1331 and state law claims under 28 U.S.C. §1367.

Final judgment was entered on March 31, 2022.  R.206, Judgment, PageID # 17961. Notice of appeal was timely filed on April 7, 2022.  R.207, NOA, PageID # 17963. Jurisdiction in this Court is therefore proper under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.      Is a jury trial warranted on Plaintiff's § 1983 malicious prosecution claim where Defendants manufactured probable cause through the fabrication of false evidence and withholding of exculpatory evidence before a jury ultimately acquitted Plaintiff of capital murder?

2.      Is a jury trial warranted on Plaintiff's fabrication claim where Defendants fabricated false statements to deprive Plaintiff of liberty prior to a jury ultimately acquitted Plaintiff of murder?

3.      Does Plaintiff's municipal liability claim merit a jury trial where Knox County provided no training or policies governing conducting criminal investigations, documenting evidence, or conducting interrogations and interviews,

making it highly predictable that officers would violate citizens' constitutional rights?

4.     Should the Court reinstate Plaintiff's state law claims?

## STATEMENT OF THE CASE

### Introduction

Plaintiff William "Bill Bill" Anderson filed this civil rights suit after spending five years incarcerated and facing life imprisonment for a crime he didn't commit. R.1, Complaint, PageID #2. Plaintiff's devastating experience was not an accident but the result of intentional and robust police misconduct.

Despite having an iron-clad alibi, the Defendants set Plaintiff's prosecution in motion for the November 2011 murder of Bobby Wiggins by fabricating multiple witness statements and withholding and ignoring damning exculpatory evidence revealing the true culprits. As detailed below, Defendants disregarded video evidence of the perpetrators purchasing tools used to bury Mr. Wiggins' body and jailhouse calls in which one of the perpetrators references his co-perpetrator's involvement in the murder.

Plaintiff's tragic prosecution ended May 25, 2016, when a jury acquitted him on all charges. R.1, Complaint, PageID # 2. He continues to suffer from the Defendants' unconstitutional misconduct, caused, in part, by the absence of Knox County's training, supervision, and policies and procedures.

# STATEMENT OF THE CASE[1]

## A. The Murder of Bobby Wiggins

On December 2, 2011, James Otis Sizemore led members of the Knox County Sheriff's Office and the Kentucky State Police to the location of Bob Wiggins' deceased body on Red Bird Mountain. R.193-31, Eubanks Dep. Vol. 2, PageID # 14987, 14900-14902. Wiggins was a known narcotics user and dealer in the area. R.193-6, K. York Dep., PageID # 12547. Sizemore used and sold drugs for his uncle, Jeff Gray. *Id.* at 12549.

At the time of Wiggins' murder, Defendant Pickard had known Sizemore for nearly a decade and believed that he was a liar. R.193-16, 5/9/2016 Trial Tr., PageID # 14120. In fact, Defendant Pickard confessed that at the time he interrogated Sizemore, he "kn[e]w the truth wasn't in him," and when he had dealt with Sizemore criminally, "he was [bound] to tell you anything that you'd listen to." *Id.* at 14120, 14109.

### 1. Defendants Pickard and Eubanks Learn Sizemore was With Wiggins When Wiggins Was Last Seen Alive

Wiggins' sister and Wiggins' friend, Kim York, filed a missing person's report with Knox County Sheriff's Defendants Pickard and Eubanks on December 1, 2011. R.193-13, Missing Person's Report, PageID # 13531. The Defendant Officers learned that Wiggins was last seen alive on November 23, 2011, when he

---

[1] Additional facts will be detailed within the arguments below, as necessary.

left Ms. York's home early that afternoon with Sizemore in Wiggins' black Camry. R.193-6, K. York Dep., PageID # 12550-51, 12559-60; R.193-13, Missing Person's Report, PageID # 13531; R.193-22, K. York St., PageID # 14830, 14832. Ms. York believed Wiggins was taking Sizemore to the home of Sizemore's uncle, Jeff Gray, or to the Flat Lick area. R.193-6, K. York Dep., PageID # 12600. Gray was also a known narcotics dealer. R.193-6, K. York Dep., # 12547, 12554-56. According to Defendant Pickard, Sizemore was "scared to death" of Gray. R.193-16, 5/9/2016 Trial Tr., PageID # 14112.

Ms. York informed Defendants about information she had learned from Dave Fox and Plaintiff. The men said they had seen Sizemore and Jeremy Ferrell arrive in Wiggins' vehicle at a local store. R.193-22, K. York St., PageID # 14832. When Sizemore entered the store, he had a "pocket full of money." *Id.* at 14833. Plaintiff eventually left the store with Sizemore and Ferrell, and when they stopped at Ferrell's residence, Sizemore burned the contents of the glove box. *Id.* at 14834-35. Sizemore later took Plaintiff home. *Id.* at 14835. While dropping Plaintiff off at home, Sizemore gave Plaintiff a black hat and jacket that had been in the backseat of the Camry. *Id.* at 14836. When Ms. York confirmed Wiggins was wearing a black coat, blue jeans, and a black hat when he left her home, Plaintiff immediately hollered, "Oh my God, he give [sic] me his hat and jacket." *Id.* at 14836. As Fox

saw Sizemore a couple days later, Sizemore was driving a different car. *Id.* at

14833. Sizemore told Fox that the Camry had broken down so he traded it in.[2] *Id.*

### 2. Defendant Eubanks Immediately Interviews Plaintiff, Who Cooperates and Gives a Detailed Statement Further Implicating Sizemore

After speaking with Ms. York on December 1, Defendants Eubanks and

Pickard located Plaintiff at a home owned by the Messer family. R.193-16,

5/9/2016 Trial Tr., PageID # 14068-69. Plaintiff lived with the Messers. Ex. 193-7,

5/19/2016 Trial Tr., PageID # 12699.

When Defendant Eubanks arrived, Plaintiff immediately provided him with

the coat and the hat given to him by Sizemore. R.193-7, 5/19/2016 Trial Tr.,

PageID # 12708 (Anderson); R.193-16, 5/9/2016 Trial Tr., PageID # 14069

(Eubanks). Plaintiff was cooperative with law enforcement and provided a

statement without counsel. R.193-15, Eubanks Dep. Tr. Vol. 1, PageID # 13945.

Defendants Pickard and Eubanks learned that on the morning of November

23, 2011, the Messers asked Plaintiff to care for their son, Elijah, while they went

shopping for Thanksgiving. R.193-23, 12/1/2011 Anderson St., PageID # 14840.

Plaintiff arrived at the Messer residence around 10:00 a.m. R.193-7, 5/19/2016

Trial Tr., PageID # 12710. After the Messers left, Dave Fox and Plaintiff stayed to

---

[2] Actually, authorities had found Wiggins' car on fire just after midnight on November 24, 2011, less than three miles from Ms. York's residence. R.193-16, 5/9/16 Trial Tr., PageID # 14057; R.193-6, K. York Dep., PageID #12592.

care for Elijah. *Id*. at 12711-12; R.193-8, 5/16/2016 Trial Tr., PageID # 12921-12927 (E. Messer); R.193-9, L. Messer Dep. Tr., PageID # 12998-13000. The Messers returned home around 3:30-4:00 p.m. R.193-7, 5/19/2016 Trial Tr., PageID # 12714. Thereafter, per Mr. Messer's request, Plaintiff and Fox left to drop off food to some individuals in town. R.193-23, 12/1/2011 Anderson St., PageID # 14841; R.193-8, 5/16/2016 Trial Tr., PageID # 12927 (E. Messer); R.193-9, L. Messer Dep. Tr., PageID # 12998.

On the way back to the Messers, Plaintiff and Fox stopped at a local convenience store. R.193-23, 12/1/2011 Anderson St., PageID # 14842. Plaintiff told the Defendant Officers about he and Fox running into Sizemore and Ferrell. *Id.* at 14842-43. That information included that Sizemore was driving a black Camry, that Sizemore paid for their items, that Sizemore burned items from the car while at Ferrell's, and that Sizemore had given him the coat and hat. R.193-23, 12/1/2011 Anderson St., PageID #14842-14847.

### 3. The Defendant Officers' Interview of Dave Fox Corroborates Plaintiff's Alibi and Further Implicates Sizemore

Defendant Eubanks immediately interviewed Fox. R.193-26, 12/1/2011 Fox St., PageID # 14854. Fox verified Plaintiff's alibi and implicated Sizemore. *Id.* Fox also informed Defendant Eubanks that both times he had seen Sizemore that day – first at the store and then when dropping Plaintiff off 30 or so minutes after leaving

the store – Sizemore said, "Y'all ain't [sic] seen me." *Id.* at 14860. Fox further

confirmed the conversations he had with Ms. York. *Id.* at 14856.

### 4. The Defendant Officers' Interview of Jeremy Ferrell Corroborates Plaintiff's Alibi and Further Implicates Sizemore

At about 8:00 p.m. on December 1, Defendants Pickard and Eubanks

interviewed Jeremy Ferrell. R.193-14, Eubanks Dep., PageID # 13871, 13960-61;

R.193-26, Ferrell St., PageID # 14870. They learned that late in the afternoon of

November 23, Sizemore arrived at Ferrell's home. R.193-10, Ferrell Dep., PageID

# 13068, 13070. Sizemore was alone and driving a black Camry. R.193-26, Ferrell

St., PageID # 14872. Sizemore immediately requested a syringe and offered pills in

exchange. R.193-10, Ferrell Dep., PageID # 13068. Sizemore was dirty and

disheveled and appeared to have been shoveling dirt. *Id.* at 13069-70. He asked

Ferrell for a change of clothes, threw away his shirt, and washed his hands and

arms in Ferrell's kitchen sink. *Id.* at 13070.

The Defendant Officers learned that after an hour or so, Sizemore and

Ferrell drove in the Camry to a nearby convenience store. R.193-26, Ferrell St.,

PageID # 14872; R. 193-10, Ferrell Dep., PageID # 13072. There, they ran into

Plaintiff and Fox. R.193-26, Ferrell St., PageID # 14874; R. 193-10, Ferrell Dep.,

PageID # 13075. When Plaintiff was short on money, Sizemore had 6-8 $20 bills

and offered to pay the difference. R. 193-10, Ferrell Dep., PageID # 13079; R.193-

7, 5/192016 Trial Tr., PageID # 12717.  Ultimately, Plaintiff rode to Ferrell's with

Ferrell and Sizemore to consume pills. R.193-7, 5/19/2016 Trial Tr., PageID # 12718-12720. Sizemore had several pills in his possession. R. 193-26, Ferrell St., PageID # 14873.

Once there, Sizemore pulled every paper out of the Camry's glove box, asked Ferrell if he could burn them, and then did so. R.193-26, Ferrell St., PageID # 14873, 14875. Sizemore told Ferrell that "he was on the run for several things" and was "awful paranoid;" "every time a vehicle would drive by, he was ready to bail out." *Id.*

## 5. By The Evening of December 1, 2011, Defendants Eubanks and Pickard Verified Plaintiff's Alibi and Determined that Sizemore Was Likely Responsible for Wiggins' Disappearance

In his deposition, Defendant Eubanks acknowledged that Ferrell and Fox corroborated Plaintiff's alibi. R.193-15, Eubanks Dep. Vol. 1, PageID # 13952, 13959-60, 13969-70. Defendant Eubanks agreed that the statements given by Plaintiff, Fox, and Ferrell were all consistent. *Id*. at 13952, 13960. He acknowledged that there was nothing in Plaintiff's December 1, 2011 statement implicated him in any crime. *Id*. at 13953. Rather, Eubanks acknowledged the statements obtained on December 1, 2011 from Ms. York, Fox, Ferrell, and Plaintiff constituted circumstantial evidence implicating Sizemore in Wiggins' murder. *Id*. at 13900. Nevertheless, Defendants quickly focused on Plaintiff.

## B. Defendants Fabricate Statement from James Otis Sizemore, Falsely Implicating Plaintiff

### 1. Defendants Pickard and Eubanks Conduct Sizemore's First Interrogation and Fabricate his Statement

On December 2, 2011, Defendants Pickard and Eubanks interrogated Sizemore.[3] R.193-15, Eubanks Dep. Vol I, PageID # 13975, 13977. Sizemore told the Defendants a dozen false tales throughout his 2-hour interrogation. *Id.* at 13979; R.193-32, Sizemore 12/2/2011 St. Part I, PageID # 14993-15059; R.193-33, Sizemore 12/2/2011 St. Part II, PageID # 15062-15087. Although the Defendant Officers had evidence implicating Sizemore, and Sizemore alone, in Wiggins' disappearance, Defendants pushed Sizemore to implicate a second individual. R.193-32, Sizemore 12/2/2011 St. Part I, PageID # 15028, 15042; R.193-15, Eubanks Dep. Vol. I, PageID # 14003.

Specifically, Defendants Pickard and Eubanks encouraged Sizemore to falsely implicate Plaintiff in Wiggins' disappearance and death. They did so, in part, by raising Plaintiff's name and revealing that they knew Wiggins was missing the coat and hat that he was wearing on November 23, 2011. R.193-32, Sizemore 12/2/2011 St. Part I, PageID # 15025; R.193-15, Eubanks Dep. Vol. I, PageID # 14003. And, they informed Sizemore that Plaintiff provided information against him. R.193-32, Sizemore 12/2/2011 St. Part I, PageID # 15035.

---

[3] The details surrounding the Defendants' fabrication of Sizemore's first statement are discussed more thoroughly in Section B1.

When Sizemore declined to falsely implicate Plaintiff, the Defendants threatened him with spending the rest of his life in the penitentiary. R.193-29, Sizemore 12/2/2011 Audio Recorded St. Part 1, at 1:07:30-40. Once Sizemore agreed to go along with the plan to implicate Plaintiff, the Defendants praised him. R.193-32, Sizemore 12/2/2011 St. Part I, PageID # 15051. Sizemore later testified at Plaintiff's trial that he knew to implicate Plaintiff in the murder when Defendants repeatedly confronted him with the hat and coat. R.193-34, 5/17/2016 Trial Tr., PageID # 15145-46.

Ultimately, Defendants Pickard and Eubanks fed details of the crime - implicating Plaintiff - to Sizemore for him to repeat. R.193-32, Sizemore 12/2/2011 St. Part I, PageID # 15052; R.193-33, Sizemore 12/2/2011 St. Part II, PageID # 15062-63. They then made promises of consideration to Sizemore – that they would help ensure he wouldn't spend much time incarcerated – in exchange for his fabricated statement against Plaintiff. R.193-32, Sizemore 12/2/2011 St. Part I, PageID # 15048; R.193-31, Eubanks Dep. Vol II, PageID # 14934. The Defendants did so knowing Sizemore's story implicating Plaintiff was false and contradicted every other witness statement. R.193-15, Eubanks Dep. Vol. I, PageID # 13986, 13998. Eventually, Defendants Pickard and Eubanks escorted Sizemore to Red Bird Mountain, where he informed the officers of the location of Wiggins' body. R.193-31, Eubanks Dep. Vol. 2, PageID # 14987, 14900-14902.

## 2. Defendants York, Eubanks, and Johnson Conduct Sizemore's Second Interrogation and Fabricate His Statement

The Kentucky State Police took over the murder investigation once Wiggins' body was discovered. R.193-17, York Dep. Vol. 1, PageID # 14349. But Defendants Pickard and Eubanks continued to remain heavily involved in the investigation. After returning from Red Bird Mountain, Defendant Eubanks joined KSP Defendants Jason York and Johnson in Sizemore's second interrogation.[4] R.193-4, Johnson Dep., PageID #12231; R. 193-36, Sizemore 12/3/2011 St., PageID # 15384.

By the time of this interrogation, Defendant York was unaware of any physical evidence or witness implicating a second person in Wiggins' murder. R.193-17, York Dep. Vol. 1, PageID # 14357-58. Defendant York was also unaware of any evidence implicating Plaintiff, and had no reason to believe that Plaintiff was involved. *Id*. at 14368, 14425. Conversely, the Defendants knew Sizemore was responsible for killing Wiggins. R.193-36, Sizemore 12/3/2011 St., PageID # 15415; R.193-4, Johnson Dep., PageID # 12303. Regardless, the Defendant Officers set out to fabricate a statement from Sizemore inculpating Plaintiff.[5]

---

[4] Although mostly silent, Defendant Johnson was present for Sizemore's interrogation and failed to intervene. R.193-4, Johnson Dep., PageID # 12213.
[5] The details surrounding the Defendants' fabrication of Sizemore's second statement are discussed more thoroughly in Section II.D.

Picking up where Defendants Pickard and Eubanks left off, Defendant York encouraged Sizemore to implicate Plaintiff and was the first person to interject Plaintiff's name during the December 3, 2011 interrogation. R.193-17, York Dep. Vol. 1, PageID # 14358-59; R. 193-36, Sizemore 12/3/2011 St., PageID #15386. The Defendants also provided Sizemore with the details to repeat. R. 193-36, Sizemore 12/3/2011 St., PageID #15388-91, 15400. When Sizemore contorted his story to fit the Defendants' narrative, Defendant York praised him. *Id.* at 15394, 15453. From the inception, the Defendants promised Sizemore consideration for a statement. *Id.* at 15384, 15453. Sizemore understood the promises of consideration hinged on him implicating Plaintiff. R.193-34, 5/17/2016 Trial Tr., PageID # 15267.

In the end, Sizemore repeated the false narrative that Defendants York, Johnson, and Eubanks constructed with him during this hours long interrogation. *Id*. at 45:910-50:1029. The Defendants knew that Sizemore was both willing and vulnerable to such tactics, as he was illiterate and desperate for a deal. R.193-36, Sizemore 12/3/2011 St., PageID # at 15424; R.193-17, York Dep. Vol. 1, PageID # 14312. According to Sizemore, he was high at the time he gave these statements to the Defendants, though that fact went unmentioned and undisclosed until trial. R.193-11, 5/18/2006 Trial Tr., PageID # 123212.

The Defendants knew Sizemore's implication of Plaintiff was false. R.193-17, York Dep. Vol. 1, PageID # 14388-89, 14408, 14412; R.193-15, Eubanks Dep. Vol. I, PageID # 13997-98; 14000; R.193-4, Johnson Dep., PageID # 12213. In the end, Defendant York knew Sizemore repeatedly lied to him, and as a result, admitted that he had serious concerns about the reliability of Sizemore's statement. R.193-17, York Dep. Vol. 1, PageID # 14388, 14408, 14412. In fact, Defendant Eubanks acknowledged that Sizemore's statement was insufficient to form probable cause against Plaintiff. R.193-31, Eubanks Dep. Vol. II, PageID # 14942; 14945. Regardless, the Defendants continued their quest to frame Plaintiff.

## C. Defendants York, Joseph, and Eubanks Fabricate Statement from Dave Fox, Falsely Implicating Plaintiff

On December 3, 2011,[6] Defendants York, Joseph,[7] and Eubanks interrogated Dave Fox again about Plaintiff's alibi. R.193-43, York Hoskins Dep., PageID # 1554-55, 15570-71; R.193-44, Joseph Hoskins Dep., PageID # 16093-16104; R.193-45, Fox 12/3/2011 St., PageID # 15969.

---

[6] Although Defendant Joseph stated during Fox's interview that the interview was on December 2, 2011, Defendant Joseph testified that was in error and that Fox's interview was conducted on December 3, 2011. R.193-21, Joseph Dep., PageID # 14712-14.

[7] At the time of this investigation, Defendant Joseph went by the name Jackie Pickrell. For clarity, Plaintiff refers to Defendant Pickrell/Joseph as Defendant Joseph.

As discussed *supra*,[8] over the course of several hours, Defendants York, Joseph, and Eubanks extensively questioned Fox about whether Plaintiff was in his presence during the daytime hours of November 23, 2011.[9] Therein, the Defendants fabricated a statement for Fox - that they knew to be false - to nullify Plaintiff's alibi. R.193-43, York Hoskins Dep., PageID # 15576-77, 15668-69, 25707-708; R.193-44, Joseph Hoskins Dep., PageID # 15959-69; R.193-11, 5/18/2016 Trial Tr., PageID # 13299. Their objective was to get Fox to state that Plaintiff left the Messer residence during the day on November 23, 2011 and was with Sizemore and Wiggins earlier than when they saw Sizemore at the store. R.193-45, Fox 12/3/2011 St., PageID # 15969-16149; R.193-42, Fox 12/3/2011 St. Audio.

To fabricate their false narrative, Defendants York, Eubanks and Joseph made dozens of threats against Fox – including charging him with murder and sending him to prison. *Id*.; R.193-12, Fox Dep., PageID #13423; R.193-45, Fox 12/3/2011 St., PageID # 16052, 16058-59. Additionally, the Defendants repeatedly pushed Fox to state that Plaintiff had left his presence and fed him "details" of what they believed happened and wanted him to repeat. R.193-45, Fox 12/3/2011

[8] The details surrounding the Defendants' fabrication of Fox's second statement are discussed more thoroughly in Section A3.

[9] According to Defendant Johnson, he had no knowledge of this interrogation and the recording was withheld from him. R.193-4, Johnson Dep., PageID # 12219. Indeed, Defendant Johnson testified that he didn't learn of Fox's December 3, 2011 questioning until the middle of Plaintiff's May 2016 trial. *Id*.

St., PageID # 16050-51, 16055, 16082, 16084, 16090, 16094-95, 16101-02. Fox

testified at his deposition that Defendant Joseph "just wanted [him] to say

whatever she wanted [him] to say." R.193-12, Fox Dep., PageID #13423.

Defendant Joseph was "trying to put words in his mouth" and was trying to get him

to implicate Plaintiff in Wiggins' murder. *Id.* at 13426, 13428-29. Likewise, Fox

testified that Defendant York was trying to force him to say that he had seen

Wiggins with Plaintiff that day. *Id.* at 13429. According to Fox, "he was wanting

me to say something that wasn't true." *Id.* at 13442.

   Shockingly, Defendant York resorted to verbally and physically assaulting

Fox. R.193-45, Fox 12/3/2011 St., PageID # 16114; R.193-42, Fox 12/3/2011 St.

Audio, 2:10:05-2:10:43. Still dissatisfied with Fox's statement, the Defendant

officers brought Sizemore –who had already admitted to brutally murdering a man

- into the interrogation room with Fox. R.193-45, Fox 12/3/2011 St., PageID #

16137-16142. There, they questioned Sizemore in front of Fox and played some of

Sizemore's fabricated statement, which Defendants knew was false. *Id.*

   After hours of interrogation that included both verbal and physical assaults,

Fox ultimately relented and agreed to repeat the Defendants' false and fabricated

statement - that he did not know Plaintiff's whereabouts during the time Wiggins

was killed. *Id.* at 16130.

## D. The Defendant Officers Learn of Additional Evidence Supporting Plaintiff's Innocence, Inferring Fabrication and Negating Probable Cause

Defendant Johnson was on notice, after initiating charges, of additional evidence proving the falsity of Sizemore's statement and concealed it from the preliminary hearing and grand jury. R.193-4, Johnson Dep., PageID # 12397-99; 12405-12421. Defendant Johnson admits to omitting such evidence to continue the initiation of Plaintiff's charges. *Id.*

### 1. Defendant Johnson Learns that Jailhouse Recordings Confirm the Falsity of Sizemore's Fabricated Statements

Jailhouse recordings between Sizemore and his relatives confirm the falsity and fabrication of Sizemore's statement implicating Plaintiff. The day after his arrest, Sizemore called his aunt, Wendy Gray. R.193-11, 5/18/2016 Trial Tr., PageID # 13221. In a clear admission that Sizemore only falsely implicated Plaintiff at Defendants' request, Sizemore divulged, "The only person they said is Bill Bill's name. And I told them Bill Bill helped me." *Id.* at 13225.

On December 10, 2011, Sizemore called Wendy again and revealed that he was keeping his mouth shut and would continue to avoid implicating his uncle, Jeff Gray, whom he called "Row" in the Wiggins' homicide. *Id.* at 13228-29. Sizemore admitted: "Hey, sis, I ain't said nothing now. I'll rot right here. I ain't getting out, but I ain't told on nobody." *Id.* at 13229. He stated further, "Row [Jeff Gray] right

there should know, it's all good. Only you'ins [sic] know what I know. But it's all right." *Id*.

On December 21, 2011, Sizemore reiterated to his wife Ruth that he was protecting Gray. *Id*. at 13234. Sizemore confessed: "Wendy and Jeff should be happy because I'm keeping stuff away from other people…this is what you tell him, if you talk to him, if I was a rat, he would be in jail. I ain't not rat. I ain't talked to nobody" *Id*. "That's who it was, Ruth. That's who it was with me." *Id*. "It wasn't who everybody thinks it was." *Id*. at 13235. "Row [Jeff Gray] was with me." *Id*. "That's how everything got took up there. Row [Jeff Gray], the truck." *Id*. "See, what's his name had nothing to do with it." *Id*. Defendant Johnson listened to these recordings, demonstrating Plaintiff's innocence and Gray's guilt, before trial, but he never stopped the continuation of charges against Plaintiff *Id.* at 13239-40.

## 2. Defendant Johnson Learns that Forensic Testing Establishes Falsity of Sizemore's Fabricated Statement

As summarized below, the physical evidence demonstrates the unreliability of Sizemore's fabricated statement. The testing further confirms the absence of probable cause.

According to Sizemore's statement, the murder weapon was Plaintiff's pocketknife recovered during his arrest. R.193-36, Sizemore 12/3/2011 St. Part I, PageID # 15386; 15388. Defendant Johnson sent the pocketknife to the KSP

17

Laboratory for analysis. R.193-4, Johnson Dep., PageID # 12262-63. On February 27, 2012, Defendant Johnson learned that there was no blood on the knife. *Id*. at 12263-64.

Additionally, according to Sizemore's statement, Plaintiff drove the Messers' red Rhino ATV after the murder, with blood on his hands. R.193-36, Sizemore 12/3/2011 St. Part I, PageID # 15401;R.193-33, Sizemore 12/2/2011 St. Part II, PageID # 15067-68. Defendant Johnson located the Messer's ATV, swabbed various places, including the steering wheel, and submitted this evidence to the KSP laboratory for testing. R. 193-4, Johnson Dep., PageID # 12256-57; R.193-35, Homicide File, PageID # 15324. A November 8, 2012 report revealed no blood on the steering wheel swabs. R.193-35, Homicide File, PageID # 15324. Defendant Johnson received these results in 2012. R.193-4, Johnson Dep., PageID # 12260-61. On July 10, 2013, Defendant Johnson received a second related report. *Id*. at 12261; R.193-35, Homicide File, PageID # 15323. Again, no blood was found. *Id.* Defendant Johnson was aware that *no* evidence recovered from the Messer's ATV corroborated Sizemore's account of the red ATV being used in Wiggins' murder. R. 193-4, Johnson Dep., PageID # 12261.

Further, according to Sizemore's statement, Plaintiff stabbed Wiggins before dragging his body to its ultimate resting place. R.193-36, Sizemore 12/3/2011 St. Part I, PageID # 15409. Because of this, Defendant Johnson submitted Wiggins':

(1) fingernail clippings; (2) belt; and (3) shoes to the KSP Laboratory for DNA

testing. R.193-35, Homicide File, PageID # 15317-1847-48. On July 2, 2014, the

KSP Laboratory informed Defendant Johnson that "the DNA profiles did not

match William Anderson." R.193-4, Johnson Dep., PageID # 12275.

### 3. The Defendants Learn of Overwhelming Evidence Implicating Gray and Sizemore, Demonstrating the Falsity of Sizemore's Statement

According to Sizemore's false and fabricated account, he and Plaintiff

"scattered leaves on him. Bill Bill said he's gonna [sic] come back later and take

care of it…He said – he said somebody had some lime and stuff in the ho – up

there at Junior's, or somethin'." [sic] R.193-36, Sizemore 12/3/2011 St. Part I,

PageID # 15421. By January 14, 2012, however, Defendant Johnson obtained a

video-recording and receipt from Lowe's in Corbin, Kentucky, from the evening of

November 25, 2011, indicating otherwise. R.193-47, 5/12/2016 Trial Tr., PageID #

16340-41. Defendant Johnson reviewed the footage and identified the individuals

as Gray and Sizemore. *Id*. at 16367. The receipt and footage depict Gray and

Sizemore purchasing "six bags of pulverized lime, a Maglite 3D LED flashlight, a

Cobalt digging shovel, 40-pound bag salt crystals, water, and 8-pack of D Duracell

batteries." *Id*. at 16344-45. Defendant Johnson acknowledged the items were "of

interest because we know that lime was recovered from [Wiggins] body…" *Id*. at

16368; R.193-48, Screenshot, PageID 16527.





On February 2, 2012, Defendant Johnson questioned Gray. R.193-4,

Johnson Dep., PageID # 12243. During this interview, Gray informed Defendant

Johnson that the lime, shovel, flashlight, and salt were "items to repair a broken

water line." R.193-35, Homicide File, PageID # 15351. Defendant Johnson didn't

find Gray's explanation credible. R.193-4, Johnson Dep., PageID # 12389. But

Defendant Johnson never investigated whether a broken water line was fixed. *Id*. at

12243. He never tried to recover the shovel or the crushed lime supposedly at

Gray's residence to have it compared to the substance recovered from the victim's

body. *Id*. Defendant Johnson never searched for evidence at Gray's residence that could have linked him to the murder. *Id*.

Although Defendant Johnson did no independent investigation into Gray's account, he testified at his deposition that Sizemore informed him that Gray's account was false. *Id*. at 12381. Specifically, Sizemore informed Defendant Johnson that the items purchased at Lowe's were used to bury Wiggins' body. *Id*. Defendant Johnson estimated that he learned this information from Sizemore on "December 5th, I guess." *Id*. This admission was never documented in any investigative report, disclosed to the grand jury, or disclosed to counsel prior to Plaintiff's trial. R.193-35, Homicide File; R.193-59, Grand Jury Tr.; R.193-52, Nagle Aff., PageID # 16643.

### a. The Defendant Officers Ignored Gray's Participation in the Murder and Fabricated Evidence Against Plaintiff

The Defendants never charged Gray with any crime related to Wiggins' murder. R.193-47, 5/12/2016 Trial Tr., PageID # 16370. Gray had connections to the Defendant Officers. Gray was married to Defendant York's cousin. R.193-17, York Dep. Vol. 1, PageID # 14308; R.193-50, Gray Recording Tr., PageID # 16541. Additionally, in a recorded interview, Gray admitted to making monthly payments to Defendant Pickard, through his deputies, for the right to conduct

criminal activity in Eastern Kentucky without fear of prosecution.[10] R.193-50,

Gray Recording Tr., PageID # 16545-46. Specifically, Gray paid fees shifting from

$1,000 per month to $5,000, for the pay-to-play scheme. *Id*. at 16545. In his words,

"If you are asking me if it's true, I'm telling you yes. I'm in a case right now over

trafficking drugs.  And yes, I paid officers that came to my house to collect their

money. This went on for years." *Id.* at 16547. "I paid them $1,000 per month for a

long time, for about five years." *Id*. Once Gray refused to pay the monthly $5,000

fee, Kentucky State Police arrested him for drug trafficking. *Id.*

### E. Defendant Johnson Knowingly Presents False and Fabricated Evidence at the Preliminary Hearing and to the Grand Jury

#### 1.  Defendant Johnson Knowingly Presents Fabricated Evidence at the Preliminary Hearing, While Withholding Exculpatory and Impeaching Evidence

Despite the plethora of evidence implicating Sizemore and Gray in Wiggins'

murder and the lack of probable cause against Plaintiff, on December 3, 2011,

Defendant Mefford signed a criminal complaint and initiated charges against

Plaintiff for Wiggins' murder. R.1, Complaint, PageID # 21.

On December 21, 2011, Defendant Johnson testified at the preliminary

hearing. R.193-4, Johnson Dep., PageID # 12376; R.193-58, Preliminary Hearing

---

[10] Plaintiff deposed Jeff Gray. R. 193-51, Gray Dep., PageID # 16553. When confronted with the audio-recorded admissions at his deposition, Gray authenticated his voice and repeatedly invoked his Fifth Amendment rights regarding the murder and the pay-to-play scheme. *Id.* at 16598-16607, 16565-16568, 16574.

Tr., PageID # 16664-16678. There, Defendant Johnson introduced Sizemore's fabricated statement as discussed *supra*. R.193-58, Preliminary Hearing Tr., PageID # 16657. Johnson withheld the inconsistencies in Sizemore's statements, the methods of creating Sizemore's statements by feeding information, the promises of consideration, and the threats to Sizemore. *Id.* at 16656-16663. And, Defendant Johnson testified falsely.

Specifically, Defendant Johnson falsely testified that Sizemore claimed Plaintiff held a knife[11] in his right hand when Wiggins was stabbed. R.193-4, Johnson Dep. Tr., PageID # 12378-79. In his deposition, Defendant Johnson acknowledged that this deviated from Sizemore's December 3, 2011 statement where Sizemore claimed the knife was in Plaintiff's left hand – a fact about which Sizemore was aggressively confronted. *Id.* at 12379. Additionally, Defendant Johnson testified that the autopsy confirmed the location of the stab wounds described by Sizemore. R.193-58, Preliminary Hearing Tr., PageID # 16657-58. As Defendant Johnson acknowledges, the autopsy *disproves* Sizemore's account in

_____

[11] Defendant Johnson testified to the recovery of a knife from Plaintiff at the time of his arrest that was sent to the KSP laboratory for testing. R.193-58, Preliminary Hearing Tr., PageID # 16659. Of course, the laboratory excluded that knife from being linked to the crime. R.193-35, Homicide File Ex. 34, PageID # 15348. Further, Dr. George Nichols testified at the underlying criminal trial that he conducted a comparison of the injuries sustained by Wiggins to the knife recovered. R.193-63, 5/20/2016 Trial Tr., PageID # 16927-16930. Based on this comparison, Dr. Nichols formed the opinion that injuries sustained by Wiggins were not produced by the knife recovered. *Id*. at 16930.

significant ways, including the location of the stab wounds.[12] R.193-4, Johnson Dep., PageID # 12316-18.

Finally, on cross-examination, the defense attempted to ask Defendant Johnson about Plaintiff's alibi witnesses. In response, Defendant Johnson testified that he did not have a transcript from the Knox County Sheriff Department's December 1, 2011 interview of Ferrell. R.193-58, Preliminary Hearing Tr., PageID # 16659. He likewise claimed to not remember what Ferrell told those officers. *Id.* When asked about Kimberly York, Defendant Johnson again testified that he had not yet received any notes about that interview and couldn't testify to her knowledge. *Id.* at 16659-60. Defendant Johnson's testimony on this account was false. R.193-31, Eubanks Dep. Vol. 2, PageID #14912-13. Defendant Eubanks provided the statements to Defendant Johnson after returning from Red Bird Mountain, and he gave a "synopsis of" the statements obtained earlier in the investigation to the KSP Defendants prior to Sizemore's questioning. *Id.* at 14914-15; 14947-98. Defendant Johnson agrees that he was provided information by Defendant Eubanks prior to questioning Sizemore. R.193-4, Johnson Dep. Tr., PageID # 12316-18 Ex. 3, Johnson Dep., PageID # 12286-87. According to

---

[12] Sizemore falsely asserted that Plaintiff stabbed Wiggins "less than 10 [times]" and that Plaintiff stabbed Wiggins in the side and/or from behind. R.193-36, Sizemore 12/3/2011 St., PageID # 15409. Yet, the autopsy revealed that Wiggins was stabbed 18 times and only in the front torso. R.193-61, Autopsy Report, 16701.

Defendant Johnson, "those individuals had been spoke [sic] to, and the information was relayed to me." *Id*. at 12298.

In the end, Defendant Johnson admitted that the charges against Plaintiff were based on Sizemore's statement. R.193-58, Preliminary Hearing Tr., PageID # 16660.

### 2. Defendant Johnson Presents Sizemore's Fabricated Statement to Grand Jury While Withholding Critical Exculpatory and Impeachment Evidence

On February 17, 2012, Defendant Johnson testified before the Bell County Grand Jury to secure an indictment against Plaintiff for Bobby Wiggins' murder. R.193-35, Homicide File, PageID # 15439; R.193-59, GJ Tr., PageID # 16665-16678. Defendant Johnson intentionally chose what information to provide to - and by virtue withhold from - the grand jury. R.193-4, Johnson Dep., PageID # 12421. At the time, he knew that the grand jurors would take whatever information he provided into account when determining whether to initiate charges against Plaintiff. *Id*.

As he did in the preliminary hearing, Defendant Johnson presented Sizemore's fabricated statement and repeated many of the same falsehoods. R.193-59, GJ Tr., PageID # 16665-16678. In regard to Sizemore's fabricated statement, Defendant Johnson also withheld the following from the jurors: (1) the false stories

Sizemore provided to law enforcement[13]; (2) the dozen different stories Sizemore told before implicating Plaintiff[14]; (3) that law enforcement first suggested Plaintiff's name to Sizemore prior to taking his statement[15]; (4) that law enforcement told Sizemore what to say[16]; (5) that Sizemore's statements conflicted with the physical evidence[17]; (6) the statements that demonstrated the falsity of Sizemore's account by witnesses like Ferrell, Fox, and Ms. York[18][19]; and, (7) promises of consideration made to Sizemore.[20] Although he admitted that he was aware of the inconsistencies between Sizemore's statement and the autopsy report, Defendant Johnson withheld the information he learned at the autopsy that refuted Sizemore's statement. R.193-4, Johnson Dep., PageID # 12415-16.

Likewise, Defendant Johnson withheld from the jurors the information provided by Ferrell - namely, that Sizemore came over to his house alone driving Wiggins' vehicle, was dirty, desperate for a change of clothes, and flush with pills and money. R.193-4, Johnson Dep., PageID # 12406. Instead, he gave the jurors

---

[13] R.193-4, Johnson Dep., PageID # 12409-10.
[14] *Id.* at 12417.
[15] *Id.* at 12417-18.
[16] *Id.* at 12418.
[17] *Id.*
[18] *Id.* at 12413-14.
[19] By the time of the Grand Jury, Defendant Johnson had already confirmed Plaintiff's alibi by interviewing Mr. and Mrs. Messer, Elijah Messer, and Jeremy Ferrell on January 10, 2012 – each of whom confirmed Plaintiff's account and alibi. *Id.* at 12354-57; R.193-35, Homicide File, PageID # 15354-54.
[20] R.193-4, Johnson Dep., PageID # 12419.

the misimpression that Plaintiff was with Sizemore when Sizemore first arrived at Ferrell's home and that Plaintiff participated in burning the contents of the glove box with Sizemore. R.193-59, GJ Tr., PageID # 166658. He concealed Plaintiff's alibi – which was corroborated by both Dave Fox and Jeremy Ferrell. R.193-4, Johnson Dep., Page ID# 12419. And the jurors were never provided with the forensic exclusions of Plaintiff. *Id*. at PAGE ID# 12416-17. Defendant Johnson intentionally decided what to advise the grand jurors, and by virtue of that, what to conceal. *Id*. at PAGE ID# 12421.

Based on the fabricated and false "evidence" Johnson presented to the grand jurors, coupled with his intentional withholding of exculpatory evidence, the Grand Jury returned an indictment against Plaintiff for murder. R.193-35, Homicide File, PageID # 15275.

### Procedural History

Incarcerated since his December 3, 2011 arrest, Plaintiff stood trial in May 2016. R.193-2, Anderson Dep., PageID # 12153. On May 25, 2016, a Bell County, Kentucky jury acquitted Plaintiff of Mr. Wiggins' murder. R.1, Complaint, PageID# 24. One year later, Plaintiff filed this lawsuit based on Defendants' malicious prosecution, fabrication of false evidence, failure to disclose exculpatory evidence, due process violations, supervisory liability, failure to intervene,

conspiracy, *Monell* violations, and related state-law claims. R.1, Complaint, PageID # 1-38.

In July 2017, the Defendants filed Motions to Dismiss. R.25-1, Knox Co. Mt. Dismiss, PageID # 129-158; R.29-1, Lawson Mt. Dismiss, PageID # 200-223; R.30-1, KSP Defs. Mt. Dismiss, PageID # 243-263. In an October 3, 2018 Opinion, the District Court dismissed the following claims: Count III substantive due process under the Fourteenth Amendment, Count VII *Monell* claim against Knox County to the extent it was based on a custom, policy or practice (the claim survived to the extent it was based on a failure to train), Count X state-law intentional infliction of emotional distress, and Count XI claim against the county for *respondeat superior* liability. R.57, Opinion, PageID # 610-642.

On March 31, 2022, after summary judgment briefing, the district court found: that Plaintiff had not rebutted the probable-cause determination established by the indictment in regard to his malicious prosecution claims; that no reasonable juror could conclude that Sizemore's statement was fabricated and that Fox and Evans' statements were presented at Plaintiff's trial at which Plaintiff was acquitted, negating Plaintiff's fabrication claim; and, that Plaintiff's remaining claims failed because Plaintiff did not establish evidence of an underlying constitutional violation. R.205, SJ Opinion, PageID # 17921-17960. Accordingly,

the District Court entered judgment for Defendants. *Id*. Plaintiff appeals that ruling.

## ARGUMENT SUMMARY

Crediting Plaintiff's evidence and drawing inferences in his favor – as is required at this juncture –this is not a case that can be summarily adjudicated. First, summary judgment is not warranted on Plaintiff's malicious prosecution claim. Plaintiff has presented a robust record demonstrating that Defendants fabricated James Otis Sizemore's statement – the sole "evidence" the Defendants purported established probable cause. Plaintiff has further demonstrated – and Defendants concede – that exculpatory evidence was withheld from the grand jury. Accordingly, the probable cause presumption is rebutted. Further, Defendants admit - and the criminal jury found - Sizemore's statement to be unreliable, supporting Plaintiff's argument that probable cause never existed.

Second, summary judgment is not warranted on Plaintiff's fabrication claim. As noted *supra,* abundance evidence supports that Defendants fabricated Sizemore's statement inculpating Plaintiff. Additional evidence demonstrates that Defendants also fabricated Dave Fox's statement. Only a jury can decide the question of fabrication.

Third, summary judgment is also not warranted on Plaintiff's *Monell* claim against Defendant Knox County, as the constitutional violations are attributable to the County's absolute failure to train and discipline.

Finally, there is sufficient evidence to support a trial on Plaintiff's derivative state-law claims, which the district court dismissed because it found no underlying constitutional violation.

## ARGUMENT

### I.    The Legal Standard for Adjudicating this Appeal

This Court reviews a district court's grant of summary judgment *de novo*. *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 481 (6th Cir. 2020) (citations omitted). The summary judgment principles are familiar to the Court: summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Troutman*, 979 F.3d at 481. As the movants, defendants bear the burden to show the absence of a genuine dispute of material fact. *Troutman*, 979 F.3d at 481, citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of facts exists when a plaintiff presents "sufficient evidence from which a jury could reasonably find in [her] favor." *Id.*, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Of particular significance for this appeal, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge...ruling on a motion for summary judgment....The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 872 (6th Cir. 2020), quoting *Liberty Lobby, Inc.*, 477 U.S. at 255. After crediting plaintiff's evidence and drawing inferences in his favor, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Troutman*, 979 F.3d at 481 (citations omitted).

## II. The District Court Erred in Granting Summary Judgment by Refusing to Credit the Evidence Supporting Plaintiff's Malicious Prosecution Claim

Plaintiff presents sufficient evidence supporting his claim for malicious prosecution.

### A. The Elements of a Malicious Prosecution Claim

There are four elements of a § 1983 malicious prosecution claim: (1) a criminal prosecution was initiated against plaintiff, and the defendants made, influenced, or participated in the decision to prosecute; (2) the prosecution lacked probable cause; (3) the plaintiff sustained a deprivation of liberty; and (4) the criminal proceeding resolved in the plaintiff's favor. *King v. Harwood*, 852 F.3d

568, 580 (6th Cir. 2017). "[T]he § 1983 version of malicious prosecution is not limited to the institution of proceedings; it can also support a claim for continued detention without probable cause." *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (internal quotation marks and citations omitted).

Here, ample evidence supports a triable § 1983 malicious prosecution claim. Plaintiff was arrested on December 3, 2011 and remained in custody until a jury acquitted him in May 2016. Defendants concede that these facts satisfy the third (deprivation of liberty) and fourth elements (favorable termination) of Plaintiff's claim. *See Naselroad v. Mabry*, 2019 WIL 4725157 at *3 (E.D. Ky. Sept. 26, 2019); R.162-1, Defs. Br., PageID # at 3500. Thus, there are just two disputed elements: (1) whether Defendants made, influenced, or participated in the decision to prosecute Plaintiff, and (2) probable cause. While the record presents a triable issue on both, the district court only addressed the probable cause element. R.205, SJ Opinion, PageID # 17951. Because Plaintiff has met all four elements and successfully rebutted the presumption of probable cause, as explained below, the district court erred in granting summary judgment.

### B. Defendants Johnson, Medford, York, Pickard, Eubanks, and Lawson Made, Influenced, and/or Participated in the Decision to Prosecute Plaintiff or Contributed to His Continued Detention

As to the first element, "an officer may be responsible for commencing a criminal proceeding against a plaintiff, where the officer made, influenced, or

participated in the decision to prosecute." *Sykes,* 625 F.3d at 311 (quoting *Fox,* 489 F.3d at 237); *see also Sampson v. Vill. of Mackinaw City,* 685 F. App'x 407, 417 (6th Cir. 2017). "[I]nfluence" can be based on misstatements . . . to the prosecutor" or "pressure or influence" over an individual who either made the decision to prosecute or testified at the preliminary hearing. *Id.* at 316. Malicious prosecution is proper when an officer's "investigatory materials" contain "knowing misstatements" and are in the prosecution's possession. *Id.* at 316–17; *see also Jackson v. City of Cleveland*, 925 F.3d 793, 821 (6th Cir. 2019).

As lead detective, Defendant Johnson participated in the fabrication of Sizemore's December 3, 2011 statement, requested that Defendant Mefford initiate charges, filed his own complaint, testified at a preliminary hearing, and grand jury. Defendant Mefford was also involved in the investigation and initiated charges. Both clearly participated in the initiation of charges. *Sykes*, 625 F.3d at 313–14; *Miller v. Maddox*, 866 F.3d 386, 390–91 (6th Cir. 2017)(holding that "sw[earing] out the warrant affidavit" is enough to "influence[ ] or participate[ ] in the prosecution decision.")

Defendants York, Pickard, and Eubanks also influenced the decision to prosecute Plaintiff and continue his detention. Defendants were involved in the fabrication of Sizemore's statement falsely implicating Plaintiff. They participated in Plaintiff's arrest. Defendant York even joined Defendants Joseph and Eubanks

in coercing Fox into a false fabricated statement, which was used at trial. While

Defendants York, Pickard, and Eubanks, did not testify before the grand-jury or at

the preliminary hearing, they "influence[d]" or "play[ed] a role" in his prosecution

or continued detention by participating in the fabrication of evidence (Sizemore

and Fox) as well as the concealment of exculpatory evidence. *Mills*, 869 F.3d at

482–83; *Sykes*, 625 F.3d at 316–17; *Jackson*, 925 F.3d at 821. A reasonable jury

could conclude that Defendants York, Pickard, and Eubanks influenced Plaintiff's

prosecution and continued detention.

Finally, a reasonable jury could likewise conclude Defendant Lawson

influenced Plaintiff's continued detention. In 2016, Defendant Lawson located

Jeremiah Evans and began the process of fabricating his false statement. R.193-3,

Evans Aff. at PageID # 12196-98. Defendant Lawson fabricated a false statement

for Evans implicating Plaintiff in the murder. *Id*. The prosecutor called Evans at

Plaintiff's trial and he testified consistent with the fabricated statement. R.193-8,

Tr. at PageID #12936-945.  Defendant Lawson need not have directly participated

in the decision to prosecute, *Mills*, 869 F.3d at 482–83; *see also Tlapanco v. Elges*,

969 F.3d 638, 655 (6th Cir. 2020), as a reasonable jury could find that he

influenced Plaintiff's continued detention.

### C. Plaintiff Has Rebutted the Probable Cause Presumption

Plaintiff rebutted the presumption of probable cause. "Where an officer falsifies the evidence that purports to provide probable cause, that fact goes a long way in justifying a malicious prosecution claim brought in a § 1983 action." *Davis v. Gallagher,* 951 F.3d 743, 749 (6th Cir. 2020). We have recognized that this exception similarly applies when an officer has "misled the prosecutor, as well as the grand jury, through his deficient and reckless investigation and the critical omission of material evidence." *Jones v. Clark County,* 690 F. App'x 334, 336 (6th Cir. 2017); *see also Sanders v. Jones,* 728 Fed.Appx. 563, 565–66 (6th Cir. 2018). When the facts underlying probable cause are disputed, a jury must decide the issue. *See, e.g., Hale v. Kart,* 396 F.3d 721, 728 (6th Cir. 2005); *Gregory v. City of Louisville,* 444 F.3d 725, 743 (6th Cir. 2006); *Webb v. United States,* 789 F.3d 647, 665 (6th Cir. 2015).

Ordinarily, a grand jury indictment presumptively establishes probable cause. *Jackson*, 925 F.3d at 821. But there are significant exceptions to that rule, such as "if the proceeding [finding probable cause] is tainted—as here, by fabricated evidence—and the result is that probable cause is lacking, then the ensuing pretrial detention violates the person's Fourth Amendment rights." *King v. Harwood*, 852 F.3d 568, 588 (6th Cir. 2017); *Manuel v. City of Joliet*, 137 S. Ct. 911, 920 n.8 (2017); *see also Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017)

35

("The existence of an indictment is . . . not a talisman that wards off a malicious prosecution claim.")). A plaintiff can rebut the probable cause presumption when:

> (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury).

*King*, 852 F.3d at 587–88; *see Mills*, 869 F.3d at 480 ("We recently held in *King v. Harwood*, 852 F.3d 568 (6th Cir. 2017), that pre-indictment nontestimonial acts that were material to the prosecution of a plaintiff could rebut the presumption of probable cause established by a grand jury indictment."). "[T]his exception similarly applies when an officer has 'misled the prosecutor, as well as the grand jury, through his deficient and reckless investigation and the critical omission of material evidence.'" *DiPasquale v. Hawkins*, 748 F. App'x 688, 693 (6th Cir. 2018) (quoting *Jones*, 690 F. App'x at 336 ; *see also Rieves v. Town of Smyrna*, 959 F.3d 678, 698 (6th Cir. 2020). As held in *Jackson,* "a careful reading of *King* shows that fabricated evidence can be material to a grand jury's determination of probable cause without being presented to the grand jury." *Id.* at 821. "Plaintiffs can show that a fabrication was material to the grand jury's determination by showing 'that the officer has made knowing or reckless false statements or has

falsified or fabricated evidence in the course of setting a prosecution in motion.'"
*Id.* at 822.

### D. Defendants Fabricated James Otis Sizemore's Statement to Set Prosecution in Motion, Rebutting Probable Cause

The district court held that Plaintiff failed to rebut the presumption of probable cause because it found "Anderson has not produced any evidence that the officers falsified or fabricated evidence that was presented at the preliminary hearing or grand jury proceedings." R.205, SJ Opinion, PageID # 17950. As detailed below, the record illustrates how Defendants fabricated the false statement of James Otis Sizemore – a statement that served as the basis for the decision to prosecute Plaintiff – and then doubled down on that fabrication by coercing Plaintiff's alibi witness Dave Fox.

When initially questioned initially by Defendants Pickard and Eubanks, Sizemore told several inconsistent versions of events about what happened before Wiggins' murder. R.193-32, Sizemore 12/2/2011 St. Part 1, Page ID # 14993-14997; 15059; R.193-33, Sizemore 12/3/2011 St. Part II, PageID # 15060-15087. Although all the evidence they had gathered to that point implicated Sizemore alone, Defendants pushed Sizemore to implicate Plaintiff. Not knowing exactly what the Defendants wanted him to say, Sizemore asked the Defendants: "Wish youin's would tell me," "[s]o I can at least tell you something." *Id.* at 15034.

Defendants scripting became more specific. Defendant Eubanks raised Plaintiff's name and revealed that they knew Wiggins was missing the coat and hat [that Sizemore had given to Plaintiff] that he was wearing on November 23, 2011. R.193-32, Sizemore 12/2/2011 St. Part I, PageID # 15025; R.193-15, Eubanks Dep. Vol. I, PageID # 14003. He further informed Sizemore that Plaintiff provided information against him. R.193-32, Sizemore 12/2/2011 St. Part I, PageID # 15035. Defendant Eubanks echoed that it was "totally up to" Sizemore how much time he would serve, but that he was facing life imprisonment. *Id.* at 15039.

Feeling the pressure and finally understanding what the Defendants wanted to hear, Sizemore offered that "maybe the person you got the jacket and coat off of is tellin' you a big tale" and that "that's the man you'll be wantin' right there." *Id.* at 15040, 15046. He later testified that he knew to implicate Plaintiff in the murder once the Defendants repeatedly confronted him about the hat and coat. R.193-34, 5/17/2016 Trial Tr., PageID # 15145-46. In exchange for his fabricated statement against Plaintiff, Defendants assured Sizemore that they would try to help him. *Id.* at 15047, 15050. Sizemore later testified that he understood the promises of consideration hinged on him implicating Plaintiff. R.193-34, 5/17/2016 Trial Tr., PageID # 15267.

Ultimately, Defendants Pickard and Eubanks fed Sizemore details of the crime - implicating Plaintiff - for him to repeat. R.193-32, Sizemore 12/2/2011 St.

Part I, PageID # 15052; R.193-33, Sizemore 12/2/2011 St. Part II, PageID # 15062-63. Defendant Eubanks supplied Sizemore with a motive: "Let me guess. It was all over stealin pills." *Id.* at 15052. He then led Sizemore through a story, suggesting that "you all g[o]t in Bill Bill's little red wagon, and go on down the hill? Is that what you done?" R.193-33, Sizemore 12/2/2011 St. Part II, PageID # 15062. Eubanks added: "you go to Bill Bill's, you and Bob, in Bob's car. You go to Bill Bill's house. The one out behind the Messer's, Elijah's old house, right?" *Id.* at 15063. Sizemore simply agreed. *Id.*

After Sizemore led the Defendants to Wiggins' body, Defendants York, Eubanks and Johnson continued to further fabricate Sizemore's statement against Plaintiff. Immediately, Defendant York encouraged Sizemore to implicate Plaintiff, warning that Plaintiff will "paint you to be some cold-hearted premeditated killer." R.193-36, Sizemore 12/3/2011 St., PageID # 15386. With this warning, Defendant York started feeding Sizemore "details" about the murder. Defendant York told Sizemore he already knew the murder was a "dope deal" gone wrong. *Id.* at 15387, 15389. He stated that Sizemore had hit Wiggins in the head with a rock and thereafter, "Bill Bill came up with a knife, right?" *Id.* at 15390. He added their "sole purpose was to rob him, not kill him, right?" and that "you all did not plan on killin him, just stealin his pills, right?" *Id.* at 15391-15392. Defendant Eubanks suggested to Sizemore that, "you and [Plaintiff] basically get out and you

39

pretty much tell him, Bob, we want your damn pills." *Id.* at 15406. Sizemore confirmed Eubanks' suggestion, repeating, "I said, we want you damn pills . . . ." *Id*. at 15406. When Sizemore offered information that didn't match Defendants' narrative, they yelled at him until he changed course. *Id.* at 15411-12, 15434. When Sizemore contorted his story to fit the Defendants' narrative, Defendant York praised him. *Id.* at 15394, 15453.

Defendants knew that Sizemore's statement was false and unreliable, so they immediately interrogated Dave Fox – even though he already was cooperative and provided a statement verifying Plaintiff's alibi. When Fox again provided an alibi for Plaintiff, the Defendants refused to accept Fox's truthful statement. R.193-45, PageID # 15995-15997; 16038-16041. Instead, over several hours, Defendants York, Eubanks, and Joseph fabricated a statement from Fox through coercion and threats. *See, e.g.*, R.193-45, Fox St., PageID # 16090, 16094-95 (York: "You know fucking without a shadow of a doubt that fucking your buddy, Bobby, was at his fucking house right before he went on that mountain and fucking died up there"; "You know that James Otis brought Bobby up there and went to Bill's house before they went up on the mountain before all this other shit;" "I know you wasn't up on that mountain, okay? I'm not saying you are, but you fucking know that Bobby and James Otis was together at Bill Bill's house before he fucking died. You know that.").

Defendants threatened Fox—who was just a hapless witness—with jail time and complicity charges. R.193-45, Fox St., PageID # 16052; 16058-59; 16081; 16119. Screamed Defendant York: "I'm going to put you in fucking prison because you God damn lied so many times. I'm so fucking sick of this god damn bullshit . . . . Fuck you. Fuck you. Fuck you. Let's put his ass into fucking jail." R.193-45, Fox St., PageID # 16144; R.193-42, Fox Audio Rec., PageID # 15534 at 2:10:05-2:10:43. When Fox refused to lie for York, York became physically aggressive: Defendant York "smacked my hat off my head like this . . . [a]nd you know, was right in my face and cursing me and accusing me of doing something I hadn't done, you know, being involved in Mr. Wiggins' murder. I didn't have nothing to do with it." R.193-11, Fox Trial Tr., PageID # 13294; R.193-12, Fox Dep., PageID # 13441, 13444 (Fox describing that York was less than six inches from his face, "pretty much spitting on me," kicking chairs and flipping a desk to "scare" or "trick" him into saying something that wasn't true). Defendants' coerced Fox because they knew that Plaintiff's alibi demonstrated the falsity and unreliability of Sizemore's statement. Accordingly, there is sufficient evidence for a reasonable juror to find the Defendants fabricated Sizemore's statement.

**E. A Reasonable Juror Could Find that Defendant Johnson Presented False and Fabricated Statements at the Preliminary Hearing and Grand Jury and Withheld Material Evidence**

Defendant Johnson presented the statement he and the other Defendants fabricated from Sizemore when he testified at the preliminary hearing and before the grand jury. R.193-59, Grand Jury Tr., PageID # 16664-16678; R.193-58, Prelim. Hearing Tr., PageID # 16654-16663. That statement was material to the indictment.

Defendant Johnson also presented false testimony, misleading "the prosecutor, as well as the grand jury, through his deficient and reckless investigation and the critical omission of material evidence.'" *DiPasquale*, 748 F. App'x at 693. As explained thoroughly in Section E.2, Johnson lied when he testified that the autopsy results corroborated Sizemore's statement – they didn't. R.193-4, Johnson Dep., PageID # 12415-16. According to Sizemore's statement, he hit Wiggins in the head and then Plaintiff came from behind and stabbed Wiggins fewer than 10 times. R.193-36, Sizemore 12/3/2011 St., PageID # 15409. But the autopsy results show that Wiggins was stabbed 18 times in the front of his torso. R.193-61, Autopsy Report, 16701. Additionally, the medical examiner found no defensive wounds and determined that the wound location showed the victim was immobile when stabbed, which is inconsistent with Sizemore's statement that Plaintiff stabbed him while they were standing and tussling. R.193-36, Sizemore

12/3/2011 St., PageID # 15409. Further, nothing caused the medical examiner to believe that more than one person attacked Wiggins. R.193-62, 5/13/2016 Trial Tr., PageID # 16870. While Defendant Johnson informed the jurors that the autopsy corroborated Sizemore's statement, the opposite is true. And, Johnson never documented in any report that the autopsy report was inconsistent with Sizemore's statement. R.193-4, Johnson Dep. Tr., PageID # 12344.

Additionally, Defendant Johnson lied when he testified that he wasn't aware of the contents of Jeremy Ferrell and Kimberly York's exculpatory statements – statements that he withheld from the jurors– he was. R.193-4, Johnson Dep., PageID # 12406. He withheld the exculpatory recording of Dave Fox's interrogation where Fox repeatedly confirmed Plaintiff's alibi and implicated Sizemore in the murder. *Id.* at PAGE ID# 12419. Notably, that interrogation also depicts Defendants York and Eubanks threatening Fox into repeating a false story.

Defendant Johnson's false testimony, introduction of fabricated evidence, and omissions were abundantly material. Without this, there was no case. *Miller,* 866 F.3d at 393. Finally, Defendants' "false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony…" *King,* 852 F.3d at 587-88. As explained above, over two days, Defendants Johnson, York, Pickard, and Eubanks fabricated Sizemore's false statement. "Evidence of an officer's actions prior to and independent of his grand-jury testimony may call into

question the presumption of probable cause created by an indictment…" *Id.* at 590.

All told, Plaintiff has rebutted the presumption of probable cause.

### F. A Reasonable Juror Could Find Defendants Lacked Probable Cause to Support Charges Against Plaintiff, Even Without Fabrication

Although Plaintiff has presented a robust record proving the fabrication of Sizemore's statement, even absent fabrication, Defendants knew - and admitted - Sizemore's statement was completely unreliable. As a result, Sizemore's statement did not support probable cause against Plaintiff, both at the initiation of charges and throughout Plaintiff's continued detention.

"A police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000); *see Logsdon v. Hains*, 492 F.3d 334, 343 (6th Cir. 2007) (defining "reliable source" as "someone with respect to whom there is no apparent reason to question the person's reliability"). Here, the only evidence supporting probable cause against Plaintiff was James Otis Sizemore's statement. R.193-4, Johnson Dep. Tr., PageID # 12288-89; 12297. But Sizemore had serious credibility problems. Defendant Johnson admitted Sizemore said "things that wasn't the truth." *Id.* at 12304. Defendant Pickard knew that James Otis Sizemore was a liar. R.193-16, Trial Tr., PageID # 14108-09; 14120. Sizemore continually changed his story. R.193-15, Eubanks Dep. Tr., PageID # 13998-99. Eubanks admitted that "there ain't no way I'm going to set here and tell

44

you that" Sizemore was credible. R.193-15, Page ID # 13993. He "would've wanted to do a whole lot more investigation" before charging Plaintiff. R.193-31, Eubanks Dep. Tr., PageID # 14942-43. Similarly, Defendant York believed Sizemore's statement was not credible. R.193-17, York Dep. Tr., PageID # 14426; 14388; 14408; 14412.

Sizemore had every reason to try to deflect culpability toward Plaintiff, casting doubt on the reliability of his statement. And if the Defendant officers believed that Sizemore was not credible, then a reasonable jury easily could conclude that no probable cause existed. *See Gregory*, 444 F.3d at 749 n.11 (reasoning that it is "the precise province of the jury" to decide whether probable cause existed). In fact, the jury in Plaintiff's criminal trial did just that: disbelieving Sizemore's fabricated statement falsely implicating Plaintiff, they acquitted him.

### 1. Exculpatory Evidence Dissolved Probable Cause Against Plaintiff

When considering probable cause, officers cannot disregard available evidence, or turn a blind eye to exculpatory evidence. *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 283 (6th Cir. 2020). That's exactly what Defendants did here. Plaintiff had a confirmed alibi from another witness, which factors into the probable cause determination. *Meakens v. Benz*, 515 F. App'x 414, 418 (6th Cir. 2013).

The physical evidence also undermined probable cause. The number of stab wounds discovered during the autopsy were drastically different than Sizemore's statement. R.193-36, Sizemore 12/3/2011 St., PageID # 15418; R.193-35, Homicide File, PageID # 15285; 15839. The ATV that Plaintiff supposedly drove after the brutal murder had no blood on it. R.193-33, Sizemore 12/2/2011 St., Page ID # 15067-68, R.193-36, Sizemore 12/3/2011 St., PageID # 15422; R.193-35, Homicide File, PageID # 15348, 15323, 15325. No DNA evidence implicated Plaintiff, despite testing on numerous items of evidence. R.193-36, Sizemore 12/3/2011 St., PageID # 15424; R.193-35, Homicide File, PageID # 15319; R.193-4, Johnson Dep., PageID # 12275. Physical evidence, jail recordings and video evidence implicate Sizemore and Jeff Gray—not Plaintiff—in the murder. R.193-47, PageID # 16343-45; R.193-48, Lowe's Screenshot, PageID # 16527; R.193-11, Trial Tr., PageID # 13221-23; 13325.

All of this exculpatory evidence confirming Plaintiff's innocence – undermining probable cause - account in the probable cause determination. *Ouza*, 969 F.3d at 283. Based on the totality of the circumstances, a reasonable juror could conclude that no probable cause existed to prosecute Plaintiff or to continue his detention.

### III. The District Court Erred in Granting Summary Judgment on Plaintiff's Fabrication Claim

#### A. Plaintiff's Fabrication Claim Regarding Sizemore is a Question for the Jury

Separate from Plaintiff's malicious prosecution claim, Plaintiff asserts a fabrication claim based on the statements of Sizemore and Fox. "A Fourth Amendment claim for fabrication of evidence lies where a defendant knowingly manufactures probable cause, thereby effectuating a seizure." *Robertson v. Lucas,* 753 F.3d 606, 615 n.5 (6th Cir. 2017). The District Court's conclusion that no reasonable juror could conclude that the officers forced or coerced Sizemore to implicate Plaintiff in the murder is erroneous. R.205, SJ Opinion, PageID #17957.

The record presents two diametrically opposing stories of how Sizemore's statements implicating Plaintiff came to exist: if Plaintiff's account, the objective circumstantial evidence from Lowe's, the jail recordings, and the exclusionary forensic evidence are credited, a jury could easily conclude that Defendants coerced Sizemore into giving a false statement; if on the other hand Sizemore's (false) statement is credited, along with the Defendants' versions of the interrogations, then a jury could conclude that it was not fabricated. *See Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014) (explaining that exculpatory forensic evidence tended to show that plaintiff was not the culprit, raising likelihood that defendants fed witness details when creating his statement). On this

record, only the jury can decide this question; taking the question away from the jury and resolving all the factual disputes *against* Plaintiff, as the lower court did, is reversible error.

Quite simply, ample evidence supports a jury question on fabrication. A plaintiff's constitutional rights are violated "when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Jackson*, 925 F.3d at 815-16 (citing *Gregory*, 444 F.3d at 737). To prove fabrication, Plaintiff need not show that Defendants engaged in coercion or used constitutionally prohibited police tactics, although coercion can certainly provide circumstantial evidence of Defendants' intent to fabricate—as is the case here. *See Hurt v. Wise*, 880 F.3d 831, 841-42 (7th Cir. 2018) (overruled on other grounds by *Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019)).

In *Hurt,* 880 F.3d at 841-42, the Seventh Circuit held that a jury must be allowed to decide whether the defendant officers fabricated inculpatory statements adopted by suspects who, like Sizemore, were fed inculpatory information by the officers. *Id.* Summary judgment was improper, even though two suspects "confessed," because in a confession "permeated with coercive tactics and fact-feeding," "a trier of fact could conclude that the officers knew that the confessions were false." *Id.* at 847. The same result is warranted here.

Further, a fabrication of evidence claim can apply to evidence presented to the grand jury and to a trial jury. *Jackson*, 925 F.3d at 816 ("fabricated evidence that 'is used as [the] basis for a criminal charge' can form the basis for a § 1983 claim because, absent that evidence, there would have been no jury.") (*quoting Halsey v. Pfeiffer*, 750 F.3d 273, 294 n.19 (3rd Cir. 2014)); *see also Sornberger v. City of Knoxville*, 434 F.3d 1006, 1026-27 (7th Cir. 2006). In *Jackson*, for instance, the Court held that the plaintiff had a viable fabrication claim defeating summary judgment by showing that if the defendants had not fabricated a witness's statement, "charges would not have been brought[.]" 925 F.3d 816-17. The same is true here.

With no indicia of reliability, and all information implicating Plaintiff fed to Sizemore by Defendants, a jury could reasonably find that Defendants knowingly fabricated his statement. *Id.* at 847-48 (finding a viable fabrication of evidence claim where defendants "basically drafted the entire confession by feeding William every critical fact through suggestive questioning."); s*ee also Illinois v. Gates*, 462 U.S. 213, 230 (1983) (listing "veracity," "reliability," and "basis of knowledge" as highly relevant in determining the value of a witness's statement); *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (probable cause depends on "reasonably trustworthy information" that a suspect committed a crime). Because the evidence shows that

Defendants knew they were producing a false story through Sizemore and relied on that false story to deprive Plaintiff of his liberty, there is a triable fabrication issue.

## B. Plaintiff's Fabrication Claim Regarding Dave Fox is a Question for the Jury

Plaintiff also has a triable fabrication claim regarding Fox's statement. On December 3, 2011, Defendants York, Joseph, and Eubanks interrogated Dave Fox about Plaintiff's alibi. R.193-45, Fox Tr., PageID # 15968-16150; R.41, Fox Audio Rec., PageID # 15534. The interrogation occurred after Defendants manufactured a false statement from Sizemore. The Defendants' wanted Fox to (falsely) concede that Plaintiff left the Messers' home during the day and was with Sizemore. As detailed above in Section II.D, Defendants verbally and physically coerced Dave Fox into backing away from Plaintiff's alibi. Eventually, Fox relented and agreed to comply with Defendants' fabrication that he didn't know Plaintiff's whereabouts on the day of the murder. *Id.* at 16130. Based on the foregoing, a reasonable juror could conclude that the Defendants fabricated Fox's statement.

The district court did not address the merits of Plaintiff's fabrication claim regarding Fox. Instead, the district court granted summary judgment because Fox's statement was not presented until trial, where Plaintiff was acquitted. R.205, SJ Opinion, PageID # 17957. But Plaintiff's acquittal does not shield Defendants from liability. Fox's statement was fabricated the same day that Defendants initiated

charges against Plaintiff, was concealed from the grand jury (contributing to Plaintiff's five-year deprivation of liberty) and was used at trial. If Plaintiff was with Fox the entire day of the murder, then that means that Sizemore's statement was unreliable fabricated. Indeed, the reason that Defendants needed to fabricate a statement from Fox was that the case depended on whether a jury believed Fox or Sizemore. Thus, the Fox statement contributed to the deprivation of Plaintiff's liberty.

## IV. Plaintiff's Derivative Federal Claims and State Law Claims Should Be Reinstated

The district court cursorily dismissed Plaintiff's remaining federal claims - failure to supervise, failure to intervene, civil conspiracy, and municipal liability - and state-law claims by holding that the court's failure to find an underlying constitutional violation defeated those claims. R.206, SJ Op., PageID # 17958. Because the underlying constitutional claims have merit and there is sufficient evidence to supporting them, each should be reinstated.

### A. A Trial on the Municipal Liability Claims Against Knox County is Warranted

A county municipality can be directly liable under §1983 for constitutional violations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To establish municipal liable under § 1983, a plaintiff "must prove that the municipality's policy or custom caused the alleged injury." *Ouza*, 969 F.3d at 286(citations

omitted). One way to prove an unlawful policy or custom is to show that the constitutional violation was caused by failure to train or supervise, where the need was sufficiently obvious and the lack caused the injury. *Id.* (citations omitted).

To prevail on a failure to train or supervise claim, the plaintiff must prove: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Id.* at 286-87 (quoting *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). In other words, inadequate police training may be the basis for § 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact." *Id.* at 287 (citing *City of Canton*, 489 U.S. at 388).

Taking the evidence in the light most favorable to the nonmovant, Plaintiff is entitled to a trial on the failure to train and failure to supervise theories of municipal liability against Defendant Knox County.

### 1. The Evidence Supports that the Department's Training and Supervision Were Constitutionally Inadequate

Knox County provided no training on conducting criminal investigations, documenting exculpatory evidence, or evidence fabrication. R.193-14, Pickard Dep., PageID # 13565; R.194-67, Pickard Training, PageID # 17080. Knox County never trained Defendant Pickard on documenting witness interviews, interviewing suspects and witnesses, making promises to witnesses or suspects, documenting

evidence, or preparing reports. R.193-14, Pickard Dep., PageID # 13569-71. Although he had no previous law enforcement experience, having worked as a customer service representative at a natural gas company before becoming Sheriff, Pickard never attended the police academy. *Id.* at 13568, 13563-64. In turn, Defendant Pickard never trained officers that they needed to document information obtained in interviews, that they needed to preserve and disclose exculpatory evidence, or that they should not coerce witnesses. *Id.* at 13619. In short, criminal investigations in Knox County were a free for all.

Defendant Eubanks volunteered at the Knox County Sheriff's Department for ten years before receiving any training, which was just a two-week course in 1989. R.193-15, Eubanks Dep., PageID # 13838-13840. That course provided him no training on conducting homicide investigations, interviewing witnesses, documenting evidence, or disclosing exculpatory evidence. *Id*. at 13839. Eubanks never attended the police academy, either. *Id.* at 13838.

Knox County's failure to train and supervise is also evident in its lack of policies and procedures. In 2010, the Knox County Sheriff's Department had one source for written policies and procedures. R.193-66, Policy Manual, PageID # 17044-17079; R.193-14, Pickard Dep., PageID # 13592. There were no policies or procedures governing conducting criminal investigations, no policies requiring officers to document evidence, no policies requiring officers to disclose

exculpatory evidence, and no policies about fabricating evidence, coercing witnesses, or making promises of consideration. R.193-14, Pickard Dep., PageID # 13562-63, 13617, 13620, 13621; R.193-15, Eubanks Dep., PageID # 13887-90. No unwritten policies or procedures filled the gap. R.193-14, Pickard Dep., PageID # 13599.

Consistent with their lack of training and policies, Defendants Eubanks and Pickard never created any reports documenting their investigative work in this case. R.193-15, Eubanks Dep., PageID # 13897-88, 13904.

### 2. A Jury Could Find that the Department's Inadequate Training and Supervision Were the Result of Deliberate Indifference

To defeat summary judgment, a plaintiff can show evidence of deliberate indifference by establishing that the municipality "fail[ed] to equip law enforcement officers with specific tools to handle recurring situations." *Ouza*, 969 F.3d 265 (citing *Bd. of Cty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). As set forth in *City of Canton*, "it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Ouza*, 969 F.3d at 287(quoting City of Canton, 489 U.S. at 390); *see also Jackson*, 925 F.3d at 834("When determining whether a municipality has adequately trained its employees, 'the focus must be on

adequacy of the training program in relation to the tasks the particular officers must perform.'") (quoting *City of Canton* 489 U.S. at 390); *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 739 (6th Cir. 2015) (failure-to-train claim can be based on "a single violation of federal rights, accompanied by a showing that [the county] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation.") (internal quotation marks and citation omitted).

Here, a reasonable jury could conclude that training on documenting evidence, conducting witness and suspect interviews and interrogation, fabricating evidence, and disclosing exculpatory evidence would have prevented Fox and Sizemore's fabricated statement. Adequate training would have required documentation of exculpatory evidence, including Sizemore's reputation for dishonesty, Eubanks' belief that there was no probable cause for Plaintiff's prosecution, promises of consideration, and Jeff Gray's pay-to-play scheme. These failures are attributable to Knox County's lack of policies, procedures, and training on fundamental police functions.

### 3. A Jury Could Find that the Department's Inadequate Training and Supervision Closely Related to Plaintiff's Injury

Knox County's failure to train resulted in violations of Plaintiff's constitutional rights. The failure to train led to fabricated statements and the withholding of exculpatory evidence, both of which kept Plaintiff wrongfully

incarcerated for five years. A reasonable jury could conclude that policies and training would have prevented the constitutional violations. "'The high degree of predictability may also support an inference of causation—that the municipality's indifference led to the very consequence that was so predictable.'" *Shadrick*, 805 F.3d at 739 (quoting *Bryan Cnty.*, 520 U.S. at 409-10); *see also Jackson*, 925 F.3d at 836-37 (reversing district court's summary judgment decision because evidence about whether city trained its officers on disclosure obligations was disputed); *Gregory*, 444 F.3d at 754 ("This Court has held that evidence pointing to a City's failure to provide *any* training on key duties with direct impact on the constitutional rights of citizens is sufficient to survive summary judgment with a *Monell* failure to train claim.").

A reasonable jury could find that Plaintiff's injuries were a result of Knox County's failure to train and supervise its employees. Training regarding fabrication and *Brady* would have prevented the fabricated statements obtained from Sizemore and Fox. It would have likewise required documentation of exculpatory evidence, like: (1) Sizemore's reputation for dishonesty; (2) Eubanks belief that probable cause was non-existent; (3) promises of consideration; and (4) Gray's pay-to-play scheme. Each failure is fully attributable to Defendant Knox County's lack of policies, procedures, and training.

Plaintiff's police practices expert, Charles Drago, formed several opinions supporting Plaintiff's contention that Defendant Knox County's failure to train on critical police functions amounts to deliberate indifference. R.193-71, Drago Report, PageID # 17119-17124. In his view, "the absence of training enabled the problems discussed above as it created an atmosphere where officers – like Sheriff Pickard and Deputy Eubanks – felt that they could feed information, make promises of consideration, and threats to suspects and witnesses when questioning them in order to obtain a statement." *Id.* at 17120. Due to their refusal to implement policies, procedures, and training in vital areas, Knox County gave "tacit approval to the members of the agency to violate citizen's constitutional rights as it relates to criminal investigations…" *Id.* at 17121. Plaintiff's municipal liability claims deserve to be heard by a jury.

### B. Plaintiff's Failure to Intervene Claim Merits a Trial

To prove a failure-to-intervene claim, Plaintiff must merely show that the defendants "(1) observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) had both the opportunity and the means to prevent the harm from occurring." *Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014) (citation omitted).

Here, Defendants failed to intervene to stop a violation of Plaintiff's constitutional rights: nobody, including Defendant Joseph, intervened when

observing each other feed Sizemore or Fox information, threaten them, lie to them, or make false promises to fabricate their inculpation of Plaintiff. A reasonable jury could conclude Defendants "had reason to know" that a constitutional harm was occurring and that they all "had both the opportunity and the means to prevent the harm from occurring." *Id.* at 793. Accordingly, the record presents a triable issue on Plaintiff's failure to intervene claim.

### C. A Trial is Warranted on Plaintiff's Federal Conspiracy Claim

A § 1983 conspiracy claim suffices when a reasonable jury could infer the existence of a "single plan," sharing in the general objective of depriving the plaintiff of his constitutional rights, and "an overt act was committed in furtherance of the conspiracy that caused [the plaintiff's] injury." *Webb*, 789 F.3d at 670. Plaintiff's evidence ably supports such a claim. Defendants provided information to each other during Sizemore's interrogation, and Knox County Defendants Pickard and Eubanks both remained involved in the investigation after KSP took control. This is sufficient evidence of a single plan, shared objective, and overt acts to deprive Plaintiff of his constitutional rights, supporting Plaintiff's conspiracy claim.

### D. A Trial is Warranted on Supervisory Liability

Plaintiff defeats summary judgment on his supervisory liability claim if he presents evidence, *inter alia*, showing that Defendants Pickard and Joseph

"actively participated in the alleged unconstitutional conduct or 'implicitly authorized, approved or knowingly acquiesced in the alleged unconstitutional conduct of an offending subordinate.'" *Webb*, 789 F.3d 659 (citation omitted).. The evidence shows that Defendants Joseph and Pickard were active participants in fabricating evidence against Plaintiff.  This claim deserves a trial.

### E. Plaintiff's State Law Claims Should be Reinstated

The district court granted summary judgment on Plaintiff's state law malicious prosecution claim based on same reasoning it used for dismissal of the federal claim. R.205, SJ Op., PageID # 17956. For the reasons argued above, Plaintiff's state law malicious prosecution claim should be reinstated.  Plaintiff's state law claim for negligent supervision should be reinstated, as the district court's reasoning tracks the argument on the federal claim, which remains viable. *Id.* Page ID # 17959.

DATED: August 19, 2022                    RESPECTFULLY SUBMITTED,

<u>s/Amy Robinson Staples</u>

Elliot Slosar*
Amy Robinson Staples
Margaret E. Campbell
LOEVY & LOEVY
311 N. Aberdeen, 3rd FL
Chicago, IL 60607
(312) 243-5900
*Counsel of Record*

## CERTIFICATE OF COMPLIANCE UNDER FRAP 32(g)

I, Amy Robinson Staples, an attorney, hereby certify that this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 12,997 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f). This brief complies with the typeface and type style requirements of FED. R. APP. P. 32(a)(5) and 32(a)(7) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14-point for the body and footnotes.

s/ Amy Robinson Staples

## CERTIFICATE OF SERVICE

I, Amy Robinson Staples, an attorney, certify that I filed the foregoing Brief of Appellant William Anderson on August 19, 2022 via CM/ECF, thereby delivering it to counsel of record via CM/ECF.

s/ Amy Robinson Staples

## ADDENDUM:
## Designation of Relevant District Court Documents from 6:17-cv-133

| Record Entry Number | Document Description | Page ID# Range |
|---|---|---|
| R.1 | Complaint | 1-38 |
| R.25 | Motion to Dismiss by Defendants Knox County, et al. | 126-128 |
| R.25-1 | Memorandum in Support of Motion to Dismiss by Defendants Knox County, et al. | 129-158 |
| R.29 | Defendant Tyson Lawson's Motion to Dismiss | 198-199 |
| R.29-1 | Memorandum in Support of Motion to Dismiss by Tyson Lawson | 200-224 |
| R.30 | Motion to Dismiss by Defendants Jason York, et al. | 240-242 |
| R.30-1 | Memorandum in Support of Motion to Dismiss by Defendants Jason York, et al. | 243-263 |
| R.33 | Plaintiff's Consolidated Response to Defendants' Motions to Dismiss | 335-398 |
| R.34 | Defendant Tyson Lawson's Reply to Motion to Dismiss | 399-413 |
| R.36 | KSP Defendants Joint Reply to Motion to Dismiss | 418-432 |
| R.38 | Defendants Knox County et al., Reply to Motion to Dismiss | 434-448 |
| R.40 | Plaintiff's Notice of Supplemental Authority in Support of Response to Motion to Dismiss | 468-471 |
| R.41 | Defendant York's Objection to Notice of Supplemental Authority | 472-479 |
| R.42 | Defendant Lawson's Response to Notice of Supplemental Authority | 480-482 |
| R.43 | Defendants Knox County et al., Notice of Joinder for Objection to Supplemental Authority | 483-485 |

| Record Entry Number | Document Description | Page ID# Range |
|---|---|---|
| R.45 | Motion to Join Objection by Jackie Joseph, Mark Mefford, and Bryan Johnson | 489-490 |
| R.49 | Plaintiff's Notice of Supplemental Authority in Support of Memorandum in Opposition to Motion to Dismiss | 500-510 |
| R.49-1 | Supplemental Authority, *Hoskins v. Knox County et al.*, 17-cv-84 | 511-558 |
| R.50 | Defendant York's Objection to Plaintiffs Supplemental Authority | 559-561 |
| R.51 | Plaintiff's Response to Defendant York's Objection to Supplemental Authority | 562-567 |
| R.52 | Defendant Knox County et al., Objection to Notice of Supplemental Authority | 568-571 |
| R.57 | Opinion & Order, Motion to Dismiss | 610-642 |
| R.62 | Defendant Jackie Joseph's Answer | 655-665 |
| R.63 | Defendant Bryan Johnson's Answer | 666-677 |
| R.64 | Defendant Tyson Lawson's Answer | 678-688 |
| R.65 | Defendant Mark Mefford's Answer | 689-700 |
| R.66 | Defendant Jason York's Answer | 701-712 |
| R.91 | Order | 781-782 |
| R.94 | Order re: Financials of Defendant Pickard and Materials for Lawson | 789-792 |
| R.162 | Defendants' Knox County et al., Motion for Summary Judgment | 3472-3473 |
| R.162-1 | Memorandum In Support of Motion for Summary Judgment | 3474-3518 |
| R.162-2 | Ex. 1, Transcript of Jeff Gray Recording | 3519-3540 |
| R.162-3 | Ex. 2, Jury Trial, May 17, 2016 | 3541-3758 |
| R.162-4 | Ex. 3, Courtnet Printout, James Otis Sizemore | 3759-3764 |
| R.162-5 | Ex. 4, Statement of James Otis Sizemore | 3765-3832 |

| Record Entry Number | Document Description | Page ID# Range |
|---|---|---|
| R.162-6 | Ex. 5, Statement of James Otis Sizemore | 3833-3909 |
| R.162-7 | Ex. 6, Jury Trial, May 9, 2016 | 3910-3942 |
| R.162-8 | Ex. 7, Jury Trial, May 9, 2016 | 3943-3979 |
| R.162-9 | Ex. 8, Statement of William Anderson | 3980-3992 |
| R.163 | Motion to Exclude Testimony of Charles Drago | 3995-3997 |
| R.163-1 | Memorandum in Support of Motion to Exclude Testimony of Charles Drago | 3998-4010 |
| R.163-2 | Ex. 1, Expert Report | 4011-4063 |
| R.163-3 | Ex. 2, Charles Drago Deposition | 4064-4113 |
| R.163-4 | Ex. 3, Expert Report in *Hoskins et al v. Knox County et al.*, 17-cv-84 | 4114-4165 |
| R.163-5 | Ex. 4, Opinion and Order in *Hoskins et al v. Knox County et al.*, 17-cv-84 | 4166-4181 |
| R.163-6 | Ex. 5, Opinion and Order in *Hoskins et al v. Knox County et al.*, 17-cv-84 | 4182-4272 |
| R.164 | Motion to Exclude Testimony of Dr. Richard Leo | 4275-4277 |
| R.164-1 | Memorandum in Support of Motion to Exclude | 4278-4285 |
| R.164-2 | Dr. Leo Expert Report | 4286-4324 |
| R.164-3 | Deposition of Dr. Richard Leo | 4325-4377 |
| R.176 | KSP Defendants Amended Motion for Summary Judgment and Memorandum in Support Thereof | 5065-5104 |
| R.176-2 | Jury Trial Transcript, May 17, 2016 | 5106-5172 |
| R.176-3 | Jury Trial Transcript, May 18, 2018 | 5173-5232 |
| R.176-4 | Jury Trial Transcript, May 16, 2016 | 5233-5299 |
| R.176-5 | Portion of KSP Investigative File | 5300-5348 |
| R.176-6 | KSP Investigation – Autopsy, Toxicology | 5349-5365 |
| R.176-7 | KSP Investigation – Evidence Labs | 5366-5381 |
| R.176-8 | KSP Investigation Logs | 5382-5396 |
| R.178 | Plaintiff's Response to Knox County's Motion to Exclude Testimony of Charles Drago | 5397-5421 |

| Record Entry Number | Document Description | Page ID# Range |
|---|---|---|
| R.179 | Plaintiff's Response to Knox County Defendants' Motion to Exclude Testimony of Dr. Richard Leo | 5560-5572 |
| R.180 | Defendants Reply to Motion to Exclude Charles Drago | 5775-5789 |
| R.182 | Defendants Reply to Motion to Exclude Dr. Richard Leo | 5768-5774 |
| R.193 | Plaintiff's Consolidated Response to Defendants' Motions for Summary Judgment | 11896-11999 |
| R.193-1 | Exhibit List | 12000-1202 |
| R.193-2 | Ex. 1, William Anderson Deposition Transcript | 12003-12194 |
| R.193-3 | Ex. 2, Jeremiah Evans Affidavit | 12195-12198 |
| R.193-4 | Ex. 3, Bryan Johnson Deposition Transcript | 12199-12440 |
| R.193-5 | Ex. 4, May 25, 2016 Trial Transcript | 12441-12532 |
| R.193-6 | Ex. 5, Kim York Deposition Transcript | 12533-12630 |
| R.193-7 | Ex. 6, May 19, 2016 Trial Transcript | 12631-12789 |
| R.193-8 | Ex. 7, May 16, 2016 Trial Transcript | 12790-12967 |
| R.193-9 | Ex. 8, Leonard Messer Deposition Transcript | 12968-13054 |
| R.193-10 | Ex. 9, Jeremy Ferrell Deposition Transcript | 13055-13186 |
| R.193-11 | Ex. 10, May 18, 2016 Trial Transcript | 13187-13355 |
| R.193-12 | Ex. 11, Dave Fox Dep. Tr. | 13356-13529 |
| R.193-13 | Ex. 12, Missing Person's Report | 13530-13535 |
| R.193-14 | Ex. 13, John Pickard Hoskins Deposition Transcript | 13536-13815 |
| R.193-15 | Ex. 14, Derek Eubanks Deposition Transcript Vol. 1 | 13816-14014 |
| R.193-16 | Ex. 15, May 9, 2016 Trial Transcript | 14015-14237 |
| R.193-17 | Ex. 16, Jason York Deposition Transcript Vol. 1 | 14238-14432 |
| R.193-18 | Ex. 17, Mark Mefford Deposition Transcript | 14433-14509 |

| Record Entry Number | Document Description | Page ID# Range |
|---|---|---|
| R.193-19 | Ex. 18, Mefford Discovery Responses | 14510-14542 |
| R.193-20 | Ex. 19, Tyson Lawson Deposition Transcript | 14543-14655 |
| R.193-21 | Ex. 20, Jackie Joseph Deposition Transcript | 14656-14826 |
| R.193-22 | Ex. 21, Kim York Statement | 14827-14836 |
| R.193-23 | Ex. 22, 12/11/2011 William Anderson Statement | 14837-14850 |
| R.193-24 | Ex. 23, 12/11/2011 William Anderson Statement (Audio) | 14851 |
| R.193-25 | Ex. 24, 12/1/11 Dave Fox Statement Transcript | 14852-14866 |
| R.193-26 | Ex. 25, 12/1/11 Dave Fox Statement (Audio) | 14867 |
| R.193-27 | Ex. 26, 12/1/11 Jeremy Ferrell Statement | 14868-14877 |
| R.193-28 | Ex. 27, 12/1/11 Jeremy Ferrell Statement (Audio) | 14878 |
| R.193-29 | Ex. 28, December 2, 2011 Sizemore Audio-Recorded Interview Pt. 1 | 14879 |
| R.193-30 | Ex. 29, December 2, 2011 Sizemore Audio-Recorded Interview Pt. 2 | 14880 |
| R.193-31 | Ex. 30, Derek Eubanks Deposition Transcript Vol. 2 | 14881-14990 |
| R.193-32 | Ex. 31, 12/2/2011 Sizemore Statement Part 1 (transcript) | 14991-15059 |
| R.193-33 | Ex. 32, 12/2/2011 Sizemore Statement Part 2 (transcript) | 15060-15087 |
| R.193-34 | Ex. 33, May 17, 2016 Trial Transcript | 15088-15270 |
| R.193-35 | Ex. 34, Bobby Wiggins Homicide File | 15271-15381 |
| R.193-36 | Ex. 35, 12/3/2011 Sizemore Statement (transcript) | 15382-15459 |
| R.193-37 | Ex. 36, 12/3/2011 Sizemore Statement (Audio) | 15460 |
| R.193-38 | Ex. 37, William Anderson Criminal Complaint filed by Mefford | 15461-15463 |

| Record Entry Number | Document Description | Page ID# Range |
|---|---|---|
| R.193-39 | Ex. 38, William Anderson Criminal Complaint filed by Johnson | 15464-15465 |
| R.193-40 | Ex. 39, 12/3/11 William Anderson Statement (Audio) | 15466 |
| R.193-41 | Ex. 40, 12/3/11 William Anderson 12/3/11 Recorded Transcript | 15467-15533 |
| R.193-42 | Ex. 41, 12/3/11 Dave Fox Recorded Interview | 15534 |
| R.193-43 | Ex. 42, Jason York Deposition Transcript (*Hoskins v. Knox County et al*) | 15535-15920 |
| R.193-44 | Ex. 43, Jackie Joseph Hoskins Deposition Transcript (*Hoskins v. Knox County et al*) | 15921-15967 |
| R.193-45 | Ex. 44, 12/3/11 Dave Fox Statement | 15968-16150 |
| R.193-46 | Ex. 45, Jason York Deposition Transcript Vol. II | 16151-16284 |
| R.193-47 | Ex. 46, May 12, 2016 Trial Transcript | 16285-16525 |
| R.193-48 | Ex. 47, Screenshot of Lowe's Purchase | 16526-16527 |
| R.193-49 | Ex. 48, Jeff Gray Recording (Audio) | 16528 |
| R.193-50 | Ex. 49, Jeff Gray Recording Transcript | 16529-16551 |
| R.193-51 | Ex. 50, Jeff Gray Deposition Transcript | 16552-16640 |
| R.193-52 | Ex. 51, Jennifer Nagle Affidavit | 16641-16643 |
| R.193-53 | Ex. 52, KSP Defendants First Supplemental Response to Request for Production | 16644-16649 |
| R.193-54 | Ex. 53, Donald Mills Homicide File (UNDER SEAL) | 16650 |
| R.193-55 | Ex. 54, Terrance Spencer Recording No. 1 (UNDER SEAL) | 16651 |
| R.193-56 | Ex. 55, Terrance Spencer Recording No. 2(UNDER SEAL) | 16652 |
| R.193-57 | Ex. 56, Spencer 5/13/14 Recorded Transcript (UNDER SEAL) | 16653 |

| Record Entry Number | Document Description | Page ID# Range |
|---|---|---|
| R.193-58 | Ex. 57, Preliminary Hearing Transcript | 16654-16663 |
| R.193-59 | Ex. 58, Grand Jury Transcript | 16664-16678 |
| R.193-60 | Ex. 59, Grand Jury Audio Recording | 16679 |
| R.193-61 | Ex. 60, Autopsy Report | 16680-16723 |
| R.193-62 | Ex. 61, May 13, 2016 Trial Transcript | 16724-16898 |
| R.193-63 | Ex. 62, May 20, 2016 Trial Transcript | 16899-17037 |
| R.193-64 | Ex. 63, Jeremiah Evans Records (UNDER SEAL) | 17038 |
| R.193-65 | Ex. 64, Blondell Letter, 5/2/16 | 17039-17042 |
| R.193-66 | Ex. 65, Knox County Polices & Procedures | 17043-17079 |
| R.193-67 | Ex. 66, John Pickard Training Records | 17080-17084 |
| R.193-69 | Ex. 67, Elliot Slosar Correspondence | 17085-17086 |
| R.193-70 | Ex. 68, Knox County Correspondence | 17087-17088 |
| R.193-70 | Ex. 69, Plaintiff's Notice of 30(B)(6) Depositions | 17089-17095 |
| R.193-71 | Ex. 70, Charles Drago Expert Report | 17096-17149 |
| R.203 | Reply Brief of Knox County Defendants | 17876-17890 |
| R.204 | KSP Defendants Reply to Motion for Summary Judgment | 17909-17920 |
| R.205 | Opinion and Order | 17921-17960 |
| R.206 | Judgment | 17961-17962 |
| R.207 | Notice of Appeal | 17963-17964 |

/s/Amy Robinson Staples
Attorney for Plaintiff-Appellant
William Anderson
Elliot Slosar*
Amy Robinson Staples
Margaret E. Campbell
LOEVY & LOEVY
311 N. Aberdeen, 3rd FL
Chicago, IL 60607
(312) 243-5900
*Counsel of Record